## UNITED STATES *v.* P. KOENIG COAL COMPANY.

ERROR TO THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN.

No. 216.	Argued March 16, 17, 1926.—Decided April 12, 1926.

1. Under § 1 of the Elkins Act, making it a misdemeanor for a shipper knowingly to accept or receive any concession or discrimination in respect of transportation whereby property shall be transported at less than the published rate " or whereby any other advantage is given or discrimination practiced," a shipper who obtains coal cars and transportation in violation of an emergency priority order of the Interstate Commerce Commission, through practice of deceit upon the carrier with respect to the use to which the coal is destined, is guilty of the offense. P. 517.

2. Guilty knowledge and collusion on the part of the carrier is not an essential to the guilt of the shipper. *Id.*

1 Fed. (2d) 738, reversed.

ERROR to a judgment of the District Court which sustained a demurrer to an indictment charging a shipper with fraudulently obtaining concessions and discriminations from a carrier in coal shipments.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* and *Mr. William H. Bonneville,* Special Assistant to the Attorney General, were on the brief, for the United States.

The only question saved to defendant is the construction of the Elkins Act. The purpose of the act was " to cut up by the roots every form of discrimination, favoritism, and inequality " (*Louisville & Nashville v. Mottley,* 219 U. S. 467), and " to require equal treatment of all shippers and prohibit unjust discrimination in favor of any of them," and " to prevent favoritism by any means or device whatsoever." *United States v. Union Stock Yards,* 226 U. S. 286. " The Elkins Act proceeded upon broad lines . . ." *Armour Packing Co. v. United States,* 209 U. S. 56.

The deception practiced upon the carriers by the false and fraudulent device enabled the defendant to obtain the unlawful concessions. No fine distinctions sought to be drawn between acquisition of those concessions by trickery and deception on the part of the shipper, and the action of carriers in knowingly granting them, will save the defendant from the penalties of the statute. *United States* v. *Met. Lumber Co.,* 254 Fed. 335; *United States* v. *Vacuum Oil Co.,* 153 Fed. 598.

If the defendant may not be reached and punished under the Elkins Act, the statute which provides for relief in times of emergency, and all service orders issued in pursuance thereof, become practically useless, as there is no other statute under which the Government may proceed. *United States* v. *Met. Lumber Co.,* 254 Fed. 335.

*Mr. Harold Goodman,* with whom *Mr. Edwin R. Monning* was on the brief, for defendant in error.

The receipt of a concession or discrimination whereby an advantage is given or discrimination is practiced, necessarily involves the grant of a concession or the practice of a discrimination by the carrier. The question is primarily the meaning of the statutory language. The common and lexical meanings exclude those for which the Government contends, and confirm the construction by the court below. This is corroborated by the committee report and the congressional debate.

The Government seeks a strained and novel construction not contemplated in those important cases in which the Elkins Act was enforced. *New York, New Haven, etc.* v. *Commission,* 200 U. S. 361; *Armour Packing Co.* v. *United States,* 209 U. S. 56; *Lehigh Coal & Nav. Co.* v. *United States,* 250 U. S. 556; *United States* v. *Union Stockyards,* 226 U. S. 286; *Standard Oil Co.* v. *United States,* 164 Fed. 376; *North. Cent. Ry. Co.* v. *United States,* 241 Fed. 25. Section 10 of the Act to Regulate

Commerce defines in clear language the offense of fraud upon the carriers, and, if it were the intention to include similar acts within the scope of the Elkins Act, it would have been simple to say so in apt language.

The district judge correctly considered *United States v. Met. Lumber Co.*, 254 Fed. 335, wrongly decided.

The gist of the offense here charged is a fraud upon the carriers and a violation of service order No. 23. It would have been competent for Congress to make violations of the Commission's rules a crime. *Avent v. United States,* 266 U. S. 127. Whatever omissions there may be in the penal sections of § 402, Transportation Act of 1920, or in the Emergency Coal Act (September 22, 1922, 42 Stat. 1025), cannot authorize this Court to assume legislative functions and to apply the Elkins Act beyond the scope indicated by its language.

．Mr. Chief Justice Taft delivered the opinion of the Court.

The P. Koenig Coal Company was indicted in the District Court for the Eastern District of Michigan, under the Elkins Act, for knowingly receiving as a shipper concessions from a carrier under the Interstate Commerce Act in respect of transportation of property in interstate commerce obtained by deceitful representation made to the carriers on which the carriers innocently and in good faith relied. The District Court sustained a demurrer to the indictment, and the United States prosecutes a writ of error under the Criminal Appeals Act (Judicial Code, § 238, par. 2, as re-enacted by the Act of February 13, 1925, 43 Stat. 938, c. 229), which provides that a writ of error from the District Court may be taken directly to this Court from a judgment sustaining a demurrer to any indictment or any count thereof where such judgment is based upon the invalidity or construction of the statute upon which the indictment is founded.

The District Court held that § 1 of the Elkins Act of February 19, 1903, c. 708, 32 Stat. 847 (re-enacted in § 2 of the Hepburn Act of June 29, 1906, c. 3591, 34 Stat. 587), under which the indictment was found, applies only to a shipper who knowingly receives a concession from a carrier when such concession is knowingly granted by the carrier in equal guilt with the shipper. *United States v. The P. Koenig Coal Company,* 1 Fed. (2d) 738.

The Koenig Coal Company is a Michigan corporation doing business in Detroit. The defendant was indicted on eighteen counts applying respectively to eighteen carloads of coal. The shipments originated in West Virginia, and were moved to Detroit in August, 1922, over the Chesapeake & Ohio Railroad Company as the initial carrier for each car.

On July 25, 1922, the Interstate Commerce Commission, acting under the Transportation Act of February 28, 1920, c. 91, Title 4, § 402, (15), 41 Stat. 456, 476, issued its service order No. 23. Section 15 gives the Commission, when shortage of equipment, congestion of traffic or other emergency requires action in any section of the country, authority to suspend its rules as to car service, and to make such reasonable rules with regard to it as in the Commission's opinion will best promote the service in the interest of the public and the commerce of the people, and to give direction for performance or priority in transportation or movement of traffic. Service Order No. 23 declared that there was an emergency upon the railroad lines east of the Mississippi River, and directed that coal cars should be furnished to the mines according to a certain order of purposes, numbered in classes 1, 2, 3, 4 and 5, and that no coal embraced in classes 1, 2, 3 and 4 should be subject to reconsignment, or diversion except for some purpose in the same or a superior class. The order required that the carriers should give preference and priority in the placement and assignment of cars for

the loading of coal to those required for the current use of hospitals, which were placed in class 2, in priority to cars for the loading of coal required for the manufacture of automobiles or automobile parts, which were placed in class 5 and later in class 3. The order remained in force from July 25 to September 20, 1922. The first count of the indictment charged that the defendant, intending to obtain a preference and priority in transportation, which it was not then lawfully entitled to receive, and to procure the coal for the use of Dodge & Company, engaged in the manufacture of automobiles and parts thereof, sent a telegraphic order to the Monitor Coal & Coke Company of Huntington, West Virginia, asking the shipment of carloads of coal to the Koenig Coal Company at Detroit for the use of the Samaritan Hospital; that it thereby secured the furnishing by the C. & O. Company, on August 5, 1922, at the request of the Monitor Company, of one car suitable for the loading and transportation of coal on its line in West Virginia, which was billed and consigned in accordance with the telegraphic order; that, when it reached Detroit, the defendant diverted the car to Dodge Brothers, who used the coal, the Samaritan Hospital not needing or requiring the coal, and not having authorized or requested the defendant to send the order; that the concession and discrimination was thus obtained by a deceitful device of which the carriers had no knowledge. The other seventeen counts are similar and refer to different cars of coal, some of them to different mines and consignors and some to different beneficiaries of the trick as actual consumers of the coal.

The demurrer challenged the indictment on various grounds, 1st, that the facts charged did not constitute a concession given or a discrimination practiced as defined by the Elkins Act; 2d, that the restrictions imposed by the Interstate Commerce Commission's Service Order No. 23 were beyond the power of the Interstate Commerce

Commission in that they were an exercise of purely leg-islative power which could not be delegated; 3rd, that the service order exceeded the authority conferred upon the Interstate Commerce Commission; 4th, in that it was beyond the power of the Federal Government thus to affect the use, consumption, price and disposition of coal in what was the exercise of a local police power reserved to the States; 5th, that the order is so arbitrary and unreasonable as not to be within the power of the National Government and to be an encroachment on the powers of the several States; 6th, that the service order violated the Fifth Amendment in depriving defendant of liberty and property without due process of law, and, 7th, that it was invalid because it gave preference to the Lake Erie ports of Ohio and Pennsylvania over the ports of other States in respect of the transportation and ship-ment of coal.

. All of these objections, except the first and third, are covered by the decision of this Court in *Avent* v. *United States,* 266 U. S. 127, where we held that Congress might consistently with the Fifth Amendment require a pref-erence in the order of purposes for which coal might be carried in interstate commerce; that it did not trench upon the power reserved to the States; that the power might be delegated to the Interstate Commerce Commis-sion for exercise under rules that were reasonable and in the interests of the public and of commerce; that the violation of such rules might be made a crime; and that the objection that the order unconstitutionally pre-ferred the ports of one State over those of another could not avail a party whom the alleged preference did not concern.

. Counsel for the defendant in his brief and argument supports the demurrer solely upon the same ground upon which the District Court sustained it, namely, that the offense under which the indictment is drawn can not be

committed without the guilty knowledge and collusion of both the shipper and the carrier. The relevant part of § 1 of the Elkins Act reads as follows:

"It shall be unlawful for any person, persons, or corporation to offer, grant, or give or to solicit, accept or receive any rebate, concession or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to said Act to regulate commerce and the Acts amendatory thereto whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said Act to regulate commerce and the Acts amendatory thereto, or whereby any other advantage is given or discrimination is practiced. Every person or corporation, whether carrier or shipper, who shall knowingly offer, grant or give or solicit, accept or receive any such rebates, concession or discrimination shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than $1,000, nor more than $20,000."

This makes it unlawful for anyone to receive any concession in respect of transportation of any property in interstate commerce by a common carrier whereby any advantage is given or any discrimination is practiced. The facts charged bring what was done exactly within this description. It was a priority or preference in securing the transportation of coal in an emergent congestion of the traffic. It was certainly a concession and one of value to one who under the law or the regulations having the force of law could not secure that priority. The words advantage, concession and discrimination in the statute must be construed to mean unlawful concession, unlawful advantage, unlawful discrimination. It certainly was not the intention of Congress to punish the granting or receiving of a lawful concession, a lawful ad-

vantage or a lawful discrimination. It is asked, if this was a concession, by whom was it conceded? The answer is by the carrier. He granted the priority and therefore he made the concession and gave the advantage and practiced the discrimination. But it was unlawful and he did not know the facts which made it so. The shipper knew them because he had secured it by his deceit, and received it. What is there in the statute that releases him from guilt, because the carrier who yielded to him the concession and gave him the advantage and made the discrimination thought it was lawful?

Reference is made to the debates in Congress and to decisions of this Court to show that, in the minds of the legislators in enacting the Elkins Act, the discrimination and inequality they sought to prevent had in the past arisen chiefly from collusion between the carrier and the shipper. As practical men of course they knew that this was the way in which violations of the law were most likely to occur. But this does not at all justify the conclusion that Congress in enacting the Elkins law intended to limit the offenses described in it to cases of collusion, if otherwise the acts charged came within the words of the statute.

We have often declared that the purpose of Congress in the Elkins law was to cut up by the roots every form of discrimination, favoritism and inequality. *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467, 478; *New Haven R. R. Co.* v. *Interstate Commerce Commission,* 200 U. S. 361, 391; *Armour Packing Co.* v. *United States,* 209 U. S. 56, 72; *United States* v. *The Union Stock Yards,* 226 U. S. 286, 309. It would be contrary, therefore, to the general intent of the law to restrain the effect of the language used so as not to include acts exactly described, when they clearly effect discrimination and inequality. Certainly no one would say that a shipper might not be convicted under the act of soliciting an un-

lawful concession or advantage or discrimination, even though the carrier refused to extend it to him. So, too, if a carrier offers an unlawful advantage to a shipper who declines it, clearly the carrier may be indicted and punished. Collusion is not necessary in such a case. Why in this? The act is plainly not confined to joint crimes. The general rule that criminal statutes are to be strictly construed has no application when the general purpose of the legislature is manifest and is subserved by giving the words used in the statute their ordinary meaning and thus covering the acts charged.

In *Dye* v. *United States,* 262 Fed. 6, a defendant in an indictment under the Elkins Act was the agent of a carrier and was in charge of the distribution of cars between coal mines during an emergency and car shortage. By a device, he violated the rule of distribution established by the Commission and secured an excessive number of cars for a particular mine, the operators of which were innocent of the inequality. He did this for his personal profit by sale of the excess. His conviction was sustained by the Circuit Court of Appeals for the Fourth Circuit.

In *Missouri, Kansas & Texas Pacific Ry. Co.* v. *Harriman,* 227 U. S. 657, the Court had to deal with the question whether a shipper who valued his goods for the purpose of obtaining the lower of two published rates based on valuation was, in an action for their loss, estopped from recovering a greater amount than his own valuation, the carrier having no knowledge of the value of the shipment. It was held that he was estopped. In reaching this conclusion, Mr. Justice Lurton, speaking for the Court, at page 671, said:

"If he knowingly declares an undervaluation for the purpose of obtaining the lower of two published rates, he thereby obtains an advantage and causes a discrimination forbidden and made unlawful by the first section of the Elkins Act of February 19, 1903 (32 Stat. 847, c. 708)."

UNITED STATES *v.* MICH. CEMENT CO.  521

It is true that this was said *arguendo,* but it has persuasive weight, and, now that the point is before us for judgment, we reaffirm it.  Compare also *Illinois Central Railroad Co.* v. *Messina,* 240 U. S. 395, 397.

*Judgment reversed.*