SPENCER KELLOGG & SONS, Inc., v.
UNITED STATES.

Circuit Court of Appeals, Second Circuit.
July 5, 1927.

No. 390.

1. Carriers ⬅➡38(3)—Provisions of Elkins and Hepburn Acts, prohibiting "any person, persons or corporation" from giving any rebate, is not limited in its application to shippers or carriers (Elkins Act, § 1, as amended by Hepburn Act, § 2 [Comp. St. § 8597]).

Elkins Act, § 1, as amended by Hepburn Act, § 2 (Comp. St. § 8597), prohibiting "any person, persons, or corporation" from giving

any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce, is not limited in its application to shippers and carriers, but includes any person or corporation whose intended acts result in a transportation of property at less than tariff rates lawfully published.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Any.]

2. Carriers ⬅➡38(3)—Elevator company, collecting charges from railroad and refunding half thereof to consignees or shippers of grain, held guilty of violating Elkins and Hepburn Acts prohibiting giving of rebate (Elkins Act § 1, as amended by Hepburn Act, § 2 [Comp. St. § 8597]).

Defendant, a corporation owning grain elevator at Buffalo, elevated grain from Lake boats and loaded it into railroad cars for shipment to consignees. For this service it was paid one cent per bushel by the railroad companies. One-half of the amount so collected defendant refunded to shippers or consignees, pursuant to prior arrangement and without knowledge of the railroad company. Held, defendant, though neither a carrier nor shipper, was guilty of violating Elkins Act, § 1, as amended by Hepburn Act, § 2 (Comp. St. § 8597), prohibiting any person or corporation from giving any rebate, concession, or discrimination in respect to the transportation of any property in interstate commerce.

3. Commerce ⬅➡3—Congress may regulate interstate commerce and action of persons engaged in it.

Congress has power under Constitution to regulate interstate commerce, and therefore the action of persons who are engaged in it.

4. Carriers ⬅➡38(3)—Agents and persons acting for carriers are bound by congressional regulations.

Agents or persons acting for a carrier are bound by congressional regulations.

5. Carriers ⬅➡38(3)—Offense of giving rebate or concession is not limited to cases of collusion between carrier and shipper (Elkins Act, § 1, as amended by Hepburn Act, § 2 [Comp. St. § 8597]).

Offense, under Elkins Act, § 1, as amended by Hepburn Act, § 2 (Comp. St. § 8597), of giving a rebate, concession, or discrimination, is not limited to cases of collusion between carrier and shipper.

6. Carriers ⬅➡38(3)—Elkins Act was intended to eliminate every form of discrimination, favoritism, or inequality (Elkins Act, § 1 [Comp. St. § 8597]).

Elkins Act, § 1 (Comp. St. § 8597), is remedial, and intended to do away with every form of discrimination, favoritism, and inequality.

In Error to the District Court of the United States for the Western District of New York.

Spencer Kellogg & Sons, Inc., was convicted (12 F.[2d] 612) of giving a rebate or concession in respect to the transportation of

interstate commerce, and it brings error. Affirmed.

Lewis & Carroll, of Buffalo, N. Y. (W. C. Carroll, of Buffalo, N. Y., of counsel), for plaintiff in error.

Richard H. Templeton, U. S. Atty., William J. Donovan, Asst. Atty. Gen., and Elmer B. Collins, Sp. Asst. Atty. Gen., of Buffalo, N. Y.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. This writ seeks to review a judgment of conviction under section 1 of the Elkins Act (32 Stat. 847) and section 2 of the Hepburn Act (34 Stat. 587 [Comp. St. § 8597]). The plaintiff in error is the owner of a grain elevator, receiving grain from the West, elevating it, storing it for a limited time, and loading it again on a common carrier's freight cars for transportation to seaboard. The shipments in question moved during 1924–1925. The common carrier named in the several counts filed with the Interstate Commerce Commission its legal and joint proportional freight tariff, which became effective prior to the dates named in the indictment, and which named rates "ex lake grain, in bulk, for export, in carloads," applicable at and east of Buffalo, N. Y., to Atlantic coast points. Application of the rates named in the tariff were subject to rules made governing the tariff. Under the rules governing the tariff, the rates constitute the total charge to be paid by the shipper for movement, including elevation and transportation of the grain from the holds of the Lake vessels at Buffalo to destination on the Atlantic coast. Rule 6 published an allowance of 1 cent per bushel for the service of elevation out of the freight rate to the Buffalo elevators, including the plaintiff in error.

The grain involved in the counts of the indictments, while still aboard the vessels on the Great Lakes, was tendered by the shippers or consignees at New York to the carriers, and by them accepted for elevation and transportation from Buffalo to destinations. The grain was then elevated by the plaintiff in error from the hold of the vessel through its elevator and loaded onto railroad freight cars of the carrier, which had contracted with the shipper for transportation. Upon delivery of the grain at destination, the carrier collected from the consignee the freight charges applicable to each shipment as published in the tariff, and, as required by rule 6, paid to the plaintiff in error the allowance of 1 cent per bushel for the performance of

the elevation. It is alleged and proved that, as to each count of the indictment upon which a conviction has been had, the plaintiff in error previously agreed with the carriers to perform the elevation services in accordance with the provision of the tariff and accepted the allowance of 1 cent per bushel. Out of the portion of the freight rate received by it from the carrier as an allowance for elevating the grain, the plaintiff in error refunded and paid one half cent per bushel to the shippers or consignees of the several shipments of grain mentioned in the indictment. The refund of the moneys thus paid to the consignees was made through grain brokers whose offices were in New York City, pursuant to a prior arrangement between the broker and the plaintiff in error. Under this arrangement, the rebates and concessions were paid to the consignees as an inducement to them to designate the plaintiff in error's elevator to elevate their grain from the Lake boats to railroad cars, and resulted in a larger volume of grain being handled by it. It also enabled the consignees to obtain transportation for their grain at less rates than those named in the filed and published tariff.

In counts 1, 2, 3, 8, 9, and 10 it is alleged that the plaintiff in error granted concessions to consignees of the grain described in those counts, whereby the grain was transported at a less rate than that named in the tariff. In counts 4, 5, 6, and 7 the plaintiff in error is charged with giving rebates to consignees of the grain therein made, whereby the grain was transported at a less rate than that named in the tariff. And count 12 alleges that the plaintiff in error granted a concession to the consignee of a shipment of grain whereby a discrimination was practiced. It was upon these 11 counts that the plaintiff in error was convicted.

[1,2] The writ presents the question of whether a corporation, other than a carrier who acts in performing interstate transportation service, commits a breach of the laws referred to by giving such concessions and rebates.

The application of the statute is not limited to shippers and carriers, but includes and punishes any person or corporation whose intended acts result in the transportation of property at less rates than those mentioned in the tariffs lawfully published and filed by common carriers. Nor is it essential to convict, within the terms of the statute, to prove that there was co-operation by a common carrier. The result forbidden by the statute was accomplished by plaintiff in

error's payments to consignees and shippers, and resulted in shippers receiving their transportation at rates less than those named in the tariffs.

As section 1 of the Elkins Act reads, anything done or omitted to be done by a carrier, which, if done or omitted to be done by any person acting for or employed by such carrier, would constitute a misdemeanor under the act, is also held to be a misdemeanor committed by such carrier, and, upon conviction thereof, punishment therefor is inflicted as prescribed. It declares it to be unlawful for any person or corporation to offer, grant, or give any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce, whereby any such property shall be, by any device whatever, transported at a rate less than that named in the tariffs. Its broad and sweeping language is a clear expression of the intendment of Congress to make the purposes of the act applicable to any person or corporation who might be in a position to commit an act which would accomplish the forbidden result, namely, the transportation of property at less rates than those named in the tariffs published by the carriers. The penalty is inflicted for the purpose of punishing all those who do acts declared to be unlawful and is directed to and includes the person or corporation whose acts result in the transportation of the property at less than tariff rates.

The plaintiff in error contends that the words "any person, persons or corporation," and "every person or corporation," are restricted in their application by the words "whether carrier or shipper," found in the penalty provision. It is claimed that the words "whether carrier or shipper" were not included in the original enactment of the statute in 1903 (32 Stat. 847), but were added by the amendment of 1906 (34 Stat. 587), and that these words were for the purpose of designating specifically those capable of committing the offenses created by the original act; in other words, that it restricts or limits the application of the Elkins Act. But the argument overlooks, not only the purpose of the act, but also its letter. The purpose of the act was not to regulate carriers or shippers. Congress intended to prohibit all rebates, concessions, or discrimination with respect to railroad transportation service. This was not confined to the regulation of carriers and shippers. The Supreme Court has broadly interpreted the Elkins Act, so as to render ineffective any arguments made that the amendment placed a limitation upon the original act.

The act concerns itself with preventing concessions and rebates with respect to interstate transportation of property, and not with carriers, shippers, their agents, or any one else, unless and until their acts result in the accomplishment of that which the statute forbids. It was not intended and does not permit any one else, other than shippers and carriers, to grant rebates or concessions.

[3, 4] Congress has the power, under the Constitution, to regulate interstate commerce, and therefore the action of persons who are engaged in it because of that fact. Gibbons v. Ogden, 9 Wheat. 1, 76, 6 L. Ed. 23. Agents or persons acting for a carrier are bound by these regulations. N. Y. C. R. R. v. U. S., 212 U. S. 481, 29 S. Ct. 304, 53 L. Ed. 613. This plaintiff in error, in using its elevator for transportation, performed transportation services, and effectuated the through movement of interstate shipments of grain. It was engaged in interstate traffic. Southern Pac. Terminal Co. v. Int. Com. Comm., 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310; B. & O. S. W. R. R. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189. The motive in paying rebates was to increase the volume of business which passed through its elevator and to add to its income. Even agents and persons acting for a carrier are within the statute. U. S. v. Union Stockyards, 226 U. S. 286, 33 S. Ct. 83, 57 L. Ed. 226. The test to be applied in determining whether the act is violated is whether the terms of the statute include the acts committed. Whether the person committing the act is a shipper or carrier is not determinative. United States v. Koenig Coal Co., 270 U. S. 512, 46 S. Ct. 392, 70 L. Ed. 709.

[5, 6] Congress did not intend to limit the offense described in it to cases of collusion between the carrier and shipper. What was done by the plaintiff in error is not in dispute, and therefore the question is whether what was done constitutes an offense by this plaintiff in error, even though it were not established to have been done in collusion with a carrier or with its knowledge or consent. The law was intended to reach either individuals or corporate entities who contribute knowingly and understandingly to a rebate or concession by any manner or device, and the relation which the culprit bore to the carrier is not necessary as a foundation upon which to rest responsibility.

It is next contended by the plaintiff in error that it can violate the act only as an accessory. Nowhere is reference made in the act to principals or accessories or principal offenders. Again the question is whether the plaintiff in error, by its action, committed

the offense condemned by the statute. Indeed, under section 332 of the Criminal Code (Comp. St. § 10506), one who commits an act constituting an offense defined in the law of the United States, or aids and abets therein, is a principal, and may be indicted and punished accordingly. Dukich v. United States (C. C. A.) 296 F. 691; Kaufman v. United States (C. C. A.) 212 F. 613. The act is a remedial statute, and its purpose is "to cut up by the roots every form of discrimination, favoritism and inequality." United States v. Koenig Coal Co., 270 U. S. 512, 46 S. Ct. 392, 70 L. Ed. 709; L. & N. R. R. Co. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Armour Packing Co. v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681; N. Y., N. H. & H. R. Co. v. Commission, 200 U. S. 361, 26 S. Ct. 272, 50 L. Ed. 515.

In Union Pacific R. R. Co. v. Updike Grain Co., 222 U. S. 215, 32 S. Ct. 39, 56 L. Ed. 171, referred to by the plaintiff in error, it was held that a railroad may not pay an allowance to one shipper and refuse an allowance to another, when both shippers have rendered the same service to the railroad company in connection with the interstate movement of their grain. This authority does not aid plaintiff in error's present position. Nor does Interstate Commerce Comm. v. Diffenbaugh, 222 U. S. 42, 32 S. Ct. 22, 56 L. Ed. 83, for there it was held that, when a shipper performs transportation service which it is the legal duty of the carrier to perform, it is entitled to reasonable compensation for the performance of that service. The elevator owner, in that case, was the shipper, and it elevated its own grain. It differs in that material fact from the case at bar. In United States v. Cleveland, C., C., etc., Co. (D. C.) 234 F. 178, the indictment alleged that the carrier granted a rebate through the Lake Shore Company as its agent. The carrier was indicted, as was the agent, the Lake Shore Company.

The plaintiff sued the carrier named in the indictment (Kellogg & Sons v. D. L. & W. Co., 204 App. Div. 243, 197 N. Y. S. 380) for 1 cent per bushel, which the railroad company refused to pay, because the plaintiff in error had agreed to pay the rebates here in question, and it was contended that, if it did so, it would subject itself to punishment under the Elkins Act. The civil liability there imposed by that decision did not determine the criminal responsibility which is here found by this verdict of guilty. The penalty is imposed here, not because it was acting for the carrier, but because it performed a service of transportation, and gave a rebate to its shipper or consignee from the compensation received for that part which it performed.

We have examined the other errors assigned, and find none which require a reversal of the judgment of conviction.

Judgment affirmed.