FROEHLING SUPPLY CO. v. UNITED STATES et al.

No. 10497.

United States Court of Appeals Seventh Circuit.

Feb. 21, 1952.

Paul J. Maguire, Haskins, Maguire & Haskins, Chicago, Ill., for appellant.

Daniel W. Knowlton, J. Stanley Payne, Washington, D. C., Otto Kerner, Jr., U. S. Atty., Lowell Hastings, Drennan J. Slater, Edward Warden, Edgar Vanneman, Jr., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff brought suit in the District Court seeking to set aside the report and order of the Interstate Commerce Commission entered June 28, 1949, in docket 30005, dismissing its complaint before the Commission, making the latter and the United States defendants. The Chicago and North Western Railway Company was permitted to intervene. Upon the complaint, the exhibits attached thereto and the answers of the defendants and the intervenor, the District Court entered judgment dismissing the suit. Plaintiff has perfected this appeal, asserting that the court erred in failing to find that the Commission violated its statutory authority in refusing to grant the relief prayed in the proceedings instituted by plaintiff before it. Certain

subsidiary issues are presented which we shall discuss in the course of this opinion.

The evidence upon which the Commission acted is not before us. Consequently the only factual question presented before the District Court and upon review here is whether the findings of the Commission are sufficient to support its order. We must presume that the evidence fully sustained the findings; the only inquiry left is as to the legality of the order based on those findings. Rochester Tel. Corp. v. U. S., 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Miss. Valley Barge Co. v. U. S., 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260.

Part of the prior history of the events helpful to an understanding of the matters in issue appear in our decision in Chicago & North Western Railway Co. v. Froehling Sup. Co., 7 Cir., 179 F.2d 133, wherein, in view of the fact that certain demurrage charges made in pursuance of the Commission's Service Order No. 369, 10 F.R. 1430 were the legal charges, we affirmed the judgment of the District Court awarding the railroad company judgment therefor. What was said in that opinion need not be repeated. Neither in that case nor in the present one did plaintiff question the validity of the Service Order. It is a part of the established tariffs of all carriers; its legality is unquestioned. Iversen v. United States, D.C., 63 F.Supp. 1001, affirmed 327 U.S. 767, 66 S.Ct. 825, 90 L.Ed. 998. See also Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202; United States v. P. Koenig Coal Co., 270 U.S. 512, 46 S.Ct. 392, 70 L.Ed. 709; United States v. Michigan Portland Cement Co., 270 U.S. 521, 46 S.Ct. 395, 70 L.Ed. 713; Turner, Dennis & Lowry Lumber Co. v. C., M. & S. P. Ry. Co., 271 U.S. 259, 262, 46 S.Ct. 530, 70 L.Ed. 934.

While the appeal in the former case was pending, on June 8, 1948, plaintiff filed with the Commission its complaint against the North Western and others asking the Commission to order a waiver of or exemption from demurrage on 143 cars delivered by the railroad to plaintiff in November and December, 1946, and January, 1947, to the extent of the difference between the amount due as computed under the tariffs then in effect by virtue of Service Order No. 369 and the amount which would have accrued under the authorized charges in effect prior to the effective date of that order. In the alternative, plaintiff prayed that, if at the time the Commission had decided the matter plaintiff had paid to the North Western the sum sought to be abated, the Commission order that company to make reparation of the amount thus exacted.

In view of a nation-wide shortage of box cars existing in the fall of 1945, the Commission, as an emergency aid in relieving the shortage, on November 9, 1945, issued Service Order No. 369 requiring increased demurrage charges on box cars, over those previously existing. Plaintiff contended before the Commission and still insists that it should have had relief as to the additional charge prescribed by the order, over and above the charges which would have been due the North Western prior to issuance of the order. To permit the railroad company to collect the additional demurrage, in view of the circumstances presented, plaintiff insisted, was unreasonable and tended unduly to enrich the carrier by allowing it to collect charges despite its failure to observe the embargo hereinafter discussed.

Some months later, in order to relieve the congestion of cars then existing at plaintiff's plant, North Western, through the Association of American Railroads, on October 30, 1946, issued an embargo on all freight consigned to plaintiff. The accumulation of cars at plaintiff's unloading places had been caused by the arrival of a large number of cars of material which plaintiff had purchased and received but which it had not unloaded. Plaintiff's contract of purchase of the material supplied, which was located in various states, contained no restriction as to the number of cars or quantities of merchandise which could be shipped by the vendor to plaintiff within any specific period, and no provision for notification of plaintiff as to when cars would be shipped. In other words, plaintiff knew in advance that these cars might arrive in any quantity at any moment. Indeed, it vainly attempted to ascertain when

shipments would be made. During the pertinent period plaintiff detained the 143 cars with which we are concerned beyond the free time allowed by the tariffs. The demurrage charges on them accuring under the tariffs existing before order No. 369 was promulgated were paid by plaintiff without objection and the additional demurrage charges due under the terms of order No. 369 amounting to $20,143.75 were paid by plaintiff after and in compliance with the decision of this court in Chicago & North Western Railway Co. v. Froehling Sup. Co., 7 Cir., 179 F.2d 133.

Before the Commission, plaintiff contended that it had been duly diligent in attempting to unload cars. However, it made no claim for adjustment of the charges for the detention of the cars because of anything that had occurred, as it might have done under the Act. In other words, plaintiff did not contend that the demurrage charges should be adjusted because of the difficulties encountered recognized as ground for adjustments but insisted that the additional demurrage charges, though legal, were unreasonable, because it had no knowledge of the embargo and because cars arrived at its plant despite the embargo. The Commission found that since plaintiff asserted that it was not aware of the embargo, it, of course, had "placed no reliance upon the embargo and could not have been injured by any nonobservance thereof which may have occurred. The failure of defendants to comply with the provisions of the embargo notice, therefore, affords no ground for a finding of unreasonableness of the charges assailed." It found further that "the proximate cause of this detention was the contract made by complainant with the Palmer Company, the shipper of these cars, under which it obligated itself to accept these shipments when and as made, without notification until after they were enroute, or had arrived at destination. In such circumstances, where the proximate cause of the detention was of the complainant's own making, no relief from applicable demurrage charges otherwise reasonable can be granted." The Commission added: "Complainant urges that while, because of the terms of the contract, it could

not have ordered a cessation of loading, nevertheless, had it known of the existence of the embargo it could and would have arranged for the diversion of future cars or for the storage of their contents at point of origin. It is difficult to understand why knowledge of the embargo was necessary for complainant to resort to diversion of the cars enroute. It was aware of the accumulation of the cars awaiting its unloading, and if it was in a position to divert any of the cars enroute, as apparently was the case, due diligence would seem to demand that such diversions should have been effected. We find that the demurrage charges assailed are not shown to have been unreasonable. The complaint will be dismissed."

▆▆ From the foregoing, it is apparent that among the decisive findings of fact of the Commission are these: (1) the demurrage rates are reasonable; (2) the proximate cause of the detention was of plaintiff's own making; (3) knowledge of the embargo was not necessary in order to furnish plaintiff an opportunity to resort to diversion of the cars; (4) due diligence upon the part of plaintiff demanded that such diversion be made effective and (5) plaintiff was not duly diligent. As we have pointed out, in the absence of the record disclosing the evidence before the Commission, we are bound to accept its findings. The only question remaining is as to whether, upon the findings, the order of the Commission was in accord with the law. Only questions affecting constitutional power or statutory authority are pertinent when the basic requisites of proof are established. Rochester Tel. Corp. v. U. S., 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147. The court can not substitute its opinion for that of the Commission simply because the facts are not in dispute. United States v. Chicago Heights Trucking Co., 310 U.S. 344, 352, 60 S.Ct. 931, 84 L.Ed. 1243; United States v. Louisville & Nashville R. R., 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245.

▆▆ Bearing in mind that plaintiff had inadequate facilities for receiving and unloading the cars upon arrival and that as a result the latter stood idle and unloaded for

as long as eight weeks, that plaintiff made no attempt to divert them to other destinations and that the charges accumulated because of plaintiff's own fault, it would seem clear that the Commission was fully justified in denying relief from imposition of demurrage assessed in accord with its own order. It must be kept in mind that plaintiff does not attack the validity of the charges as fixed by the order. In view of the Commission's findings, we think it was not authorized by statute to grant the relief prayed.

▇▇▇▇ Plaintiff insists that, inasmuch as an embargo had issued against cars destined to it[1] and inasmuch as the North Western continued to deliver cars consigned to it contrary to the terms of the embargo, the railroad may not collect the additional charge. But, as the Commission said, lack of knowledge of the embargo's existence in no way prevented plaintiff from exercising due diligence to avoid what it knew was an unduly congested car situation. It knew, irrespective of the embargo, irrespective of Order No. 369, that, for every car that came to it, not unloaded within 48 hours, legal demurrage charges would continue to accumulate until the car was unloaded. To protect itself against legal demurrage charges, it was plaintiff's duty to attempt to relieve the situation by any means reasonably possible, including not only diligent efforts to unload but efforts likewise to divert to places where congestion did not exist. Thus, in Menasha Paper Co. v. Chicago & North Western Ry., 241 U.S. 55, 36 S.Ct. 501, 60 L.Ed. 885, an embargo had been declared. In spite of the embargo merchandise was delivered to Menasha, who contended that the railroad could not collect demurrage charges upon freight arriving during the embargo. The Supreme Court held that, irrespective of the embargo, the railroad had a right to deliver any cars tendered to it and that, inasmuch as the consignee received the cars without protest, the railroad company was lawfully entitled to collect the charges despite the embargo.

Consequently, we approve the Commission's conclusion that an embargo is an emergency measure placed in effect because of some disability on the part of the carrier which makes the latter unable properly to perform its duty as a common carrier. It is not promulgated for protection of the shipper or the consignee but to protect transportation generally. Neither a shipper nor a consignee can insist upon the placement of an embargo as a matter of right. Consequently the acceptance of cars for, or the forwarding of cars to, an embargoed industry does not itself operate to relieve a consignee from demurrage charges. The carrier was under no obligation to place an embargo against plaintiff's shipments, or to enforce such an embargo once it had been placed, in order to relieve plaintiff of the payment of demurrage charges due to the latter's delay in unloading. Indeed, it was the duty of the company under the Act, as well as the common law, to accept cars for transportation and delivery. Menasha Paper Co. v. Chicago & N. W. Ry. Co., 241 U.S. 55, 36 S.Ct. 501, 60 L.Ed. 885.

▇▇▇▇ As we have observed, plaintiff had a right to ask for adjustments, but did not do so. The Commission said: "Complainant stresses its efforts to ascertain the amount of material which it was likely to receive, the acquisition of warehouse space, the employment of additional workmen and independent contractors, and the purchase of unloading equipment as evidence of due diligence in unloading the cars as promptly as circumstances permitted. The damage to the contents of cars while enroute, failure of prompt inspection of such cars, failure of switch deliveries, and the warm-up periods necessary for unloading crews are stressed as factors contributing to delays in unloading beyond its control. Demurrage tariffs in effect at the time provided for adjustment of the charges for the detention of cars beyond the free time due to delays of this character, but complainant failed to file claims for such adjustments." Furthermore, where the detention is the result

---

1. Of the 143 cars, 9 were billed to Froehling Sup. Co., 4 to Walter E. Heller, and 130 cars to Walter E. Heller Co., factors for Froehling Supply Co., Palmer Bolt and Nut Co., care Froehling Supply Co., or Palmer Bolt and Nut Co., care Walter E. Heller Co., factors for Froehling Supply Co.

of an accumulation of cars so great as to exceed unloading capacity, it is not such an unusual condition as will justify relief. Penn. R. R. Co. v. Kittanning Co., 253 U.S. 319, 40 S.Ct. 532, 64 L.Ed. 928. So here the Commission has found that the reason for detention was plaintiff's acquiescence in the accumulation of cars so great as to exceed its unloading capacity.

Believing as we do that the findings justify the order of the Commission, it follows that the District Court rightfully dismissed the complaint to set it aside.

The judgment is affirmed.