**Vernon Lloyd MILLER, Plaintiff,**

v.

**IDEAL CEMENT COMPANY, a corporation, Defendant.**

**Civ. No. 4647.**

United States District Court
D. Wyoming.

March 15, 1963.

718

Henderson, Godfrey & Kline and Robert S. Stauffer, Cheyenne, Wyo., and Robert E. Powell, Lincoln, Neb., for plaintiff.

A. G. McClintock, Cheyenne, Wyo., Donald W. Hoagland, Robert H. Harry and George E. Lohr, of Lewis, Grant & Davis, Denver, Colo., for defendant.

KERR, District Judge.

■ In this action the carrier seeks to recover undercharges in the amount of $39,728.00 plus interest and costs, allegedly due from the shipper because the carrier failed to charge and collect the tariff under which the shipments were made. This court has original jurisdiction of this proceeding arising under the Acts of Congress regulating commerce, namely, 49 U.S.C. §§ 316, 317 and 304(a). Title 28 U.S.C. § 1337; Bernstein Bros. Pipe and Machinery Co. v. Denver R. G. W. R. Co., 10 Cir., 193 F.2d 441 (1951).

Each party has moved for summary judgment relying on affidavits and exhibits attached to their motions and the record on file herein. Defendant has admitted the substantive allegations of the complaint and both parties served and answered interrogatories. The parties agree that there is no genuine issue of any material fact. There remains only the question of law to be decided, namely, the construction of the published tariff to determine the proper charges to be made by the carrier and to be paid by the shipper. United States v. Missouri-Kansas-Texas R. Co. et al., 5 Cir., 194 F.2d 777 (1952).

At all times herein material, plaintiff was a common carrier engaged in the trucking business out of Cheyenne, Wyoming, under the trade name of Vernon L. Miller Trucking. Defendant was a manufacturer and distributor of bulk cement which it shipped from its plant located in Boettcher, Colorado. Plaintiff conducted his operations pursuant to a Certificate of Public Convenience and Necessity, Docket No. MC 107369 and related Subs issued by the Interstate Commerce Commission. Plaintiff's tariff, Motor Freight Tariff No. 3, MF ICC No. 4,

was duly published and issued. Various supplements to this tariff were approved and issued by the Interstate Commerce Commission, including the controversial Supplement No. 4, which was issued September 16, 1959, and in effect from October 21, 1959 to April 15, 1960.

Between October 21, 1959 and April 15, 1960, plaintiff hauled 764 separate truckloads of bulk cement from Boettcher, Colorado, to the Fremont Canyon Power Plant, located approximately forty miles southwest of Casper, Wyoming. The route on which the shipments were made was entirely west of U. S. Highway No. 87, which is admittedly mountain territory as designated in Item 130 of the tariff.

Defendant prepaid the freight on these shipments at the rate of 42 cents per hundred weight, which was charged and accepted by plaintiff without objection. Subsequently plaintiff took the position, which he maintains in this action, that he erroneously charged and collected only the rate of 42 cents per hundred weight and that he should have added the additional charge of 10 cents per mile for each shipment over mountain territory as required by his tariff. Plaintiff's failure to make the charge for transporting defendant's cement over mountain territory resulted in an undercharge of $52.00 for each trip.

It is the contention of the carrier that he is required by 49 U.S.C. § 317(b) to collect from the shipper the ten cent charge provided in Item 130 in addition to the rate of 42 cents per hundred weight listed in Item 480.

It is the position of the shipper that the correct rate was charged and that plaintiff is not entitled to collect the alleged undercharge. Defendant contends that the applicable distance rate in Item 480 established the tariff for the shipments and that Item 130 is not included in every distance rate and was not applicable to the shipments because it was not referred to in Item 480.

Item 130 unequivocally requires the carrier to add ten cents to the mileage or distance rates for shipments to all points and places in Colorado and Wyoming west of U. S. Highway No. 87. Its provisions are clear and unambiguous:

"ADDITIONAL CHARGE FOR OPERATION IN MOUNTAIN TERRITORY.

"To all points and places in Colorado and Wyoming designated as mountain territory, which territory includes all points and places west of U. S. Highway No. 87, an additional charge of 10 cents per mile for round trip distance in mountain territory will be added to the mileage or distance rates named herein."

Manifestly, Item 130 contains no qualifications such as "when reference is made hereto", "unless otherwise provided herein", or "unless the parties agree to the contrary". Under the tariff, which binds the carrier and shipper with the force of law, the carrier is not authorized to waive the requirements of Item 130. Its application is mandatory not discretionary.

Defendant stresses the fact that the words "Add Arbitrary for operation in Mountain Territory as shown and described in Item No. 130" appear in Item 460 and in Item 460A on page 5 in the Supplement No. 4. The item applicable to defendant's shipments, Item 480, appears on page 6 of the Supplement and does not contain those words. Defendant concludes, erroneously I believe, that a pattern is thus created to show that the mountain rates were to be applied only when Item 130 was expressly referred to. The words which defendant is emphasizing appear only in Item 460 and in its amendment in Item 460A in Supplement No. 4. It does not appear in the schedules under which defendant's shipments were made. These words, therefore, are immaterial and irrelevant in the determination of this case.

The tariff as a whole governs the operations of the carrier and shipper. All its pertinent parts and provisions must be considered together and given their reasonable effect. Burrus Mill and

Elevator Co. of Oklahoma v. Chicago, R. I. and P. R. Co., 10 Cir., 131 F.2d 532 (1942), cert. den. 318 U.S. 773, 63 S.Ct. 770, 87 L.Ed. 1143 (1943). The Supplements to the tariff are additions to or alterations of the tariff as originally published. They are ingrafted upon it and are to be read as a part of it. Item 480 in Supplement No. 4 may not be isolated from Item 130 in the basic tariff. "The four corners of the instrument must be visualized and all the pertinent provisions considered together * * *". United States v. Missouri-Kansas-Texas R. Co. et al., 5 Cir., 194 F.2d 777 (1952). Item 130 in the tariff applies to mileage rates. Item 480, also in the tariff, is a schedule of mileage rates. Item 130 therefore, must apply to Item 480.

■ Defendant argues that Item 480 indicates that a reduction was made therein, and therefore Item 130 cannot be applied to it because an increase in rates would result. This reasoning is untenable. A reduction in rates does appear in Item 480 and this reduced rate was applied by the plaintiff to the defendant's shipments. The ten cent additional charge in Item 130 is not a basic rate. It has not been amended and it was not affected by the reduction of rates when Supplement No. 4 was approved and published.

■■ Defendant urges this Court to construe the tariff in the light of the intention of the parties. Supplement No. 4 cancelled the commodity rates under which defendant's cement had been shipped, and substituted therefor the distance rates in Item 480. A five cent per hundred weight savings was anticipated by defendant. Defendant contends that the parties intended to reduce the rates for shipments of defendant's cement from its plant in Boettcher, Colorado, to the Fremont Canyon Plant; that the parties understood and agreed that the rate to be charged was that published in Item 480; that plaintiff agreed to and acquiesced in the charge of 42 cents for defendant's shipments; and that plaintiff charged and accepted payment by defendant on the basis of that rate. These circumstances are substantiated by the record. They are not, however, dispositive of the case. They cannot alter the force and effect of the published tariff. No act or omission of the carrier will estop it from enforcing the applicable provisions of the tariff. Empire Petroleum Company v. Sinclair Pipeline Company, 10 Cir., 282 F.2d 913 (1960); Bernstein Bros. Pipe and Machinery Co. v. Denver and R. G. W. R. Co., 10 Cir., 193 F.2d 441 (1951).

■ This Court is bound to apply the tariff as it is published. It is treated as though it were a statute binding both the carrier and shipper to the rates, charges, rules and regulations published therein. Pittsburgh, C. C. & St. L. Ry. Co. v. Fink, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151; Pennsylvania R. Co. v. International Coal Mining Company, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446; Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., supra; Boone v. United States, 6 Cir., 109 F.2d 560 (1940). No concessions may be made contrary to the applicable tariff. United States v. P. Koenig Coal Company, 270 U.S. 512, 46 S.Ct. 392, 70 L.Ed. 709. No oral contracts or agreements may supersede or vary the tariff. Atchison, Topeka & Santa Fe Railway Company v. Robinson, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901 (1914); T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., 10 Cir., 148 F.2d 777 (1945). Deviation from the lawful rates and charges duly published in the tariff is not permitted. Louisville & Nashville Railroad Company v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A.1915E, 665 (1915).

■ Where, as here, the route actually traversed was over mountain territory, and the applicable rate was designated a distance commodity rate, Item 130 must be respected and the carrier is bound to charge and collect the additional ten cents. This conclusion is irresistible, regardless of any negotiations, misunderstandings, misrepresentations, or misquotations by or between the carrier and shipper or their agents. T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., 10 Cir., supra. "The compulsion of the

Interstate Commerce Act is such that the intricacies of private contract cannot be permitted to result in rate discrimination, actual or potential." Empire Petroleum Company v. Sinclair Pipeline Company, 10 Cir., 282 F.2d 913, 916.

It is clear beyond any doubt that Item 130 applies to mileage or distance rates charged for shipments over mountain territory. The parties admit that the mileage or distance rate schedule in Item 480 is applicable to defendant's shipments. They admit that the territory covered was in Colorado and Wyoming west of U. S. Highway No. 87. It follows without a doubt that plaintiff was bound to charge and defendant is obligated to pay not only the applicable mileage rate but also the additional ten cent charge for operations in mountain territory. Section 317(b) of 49 U.S.C. prohibits the carrier from deviating from the rate specified in the tariff. The responsibility for and the amount of the charge are fixed by the tariff and not by the parties nor by this court. Lowden et al., Trustees, v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 (1939).

No issue has been made concerning the question of interest on undercharges. Interest has been allowed on actions of this nature which are brought under federal law for the recovery of undercharges on shipments of freight in interstate commerce. Interest must be allowed from the respective dates on which the undercharges arose. T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., 10 Cir., 158 F.2d 909 (1947).

From what I have said, it is apparent that no genuine issue of material fact is here present upon which the outcome of this controversy is dependent. The construction of plaintiff's tariff is clearly a question of law. Plaintiff's motion for summary judgment is granted and defendant's motion is denied.

Upon the authorities herein set forth and my analysis of the factual situation as herein explained, I find that plaintiff is entitled to recover the sum of $39,728.-00 as undercharges for the shipments of defendant's cement, plus interest at the rate of 6% from the respective dates on which the undercharges were made, together with costs.

Plaintiff will submit proposed summary judgment within ten (10) days from this date.