INTERSTATE COMMERCE
COMMISSION,
Appellant-Appellee,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY and Larry S. Provo, Appellees-Appellants.

Nos. 75–1778, 75–1824.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1975.

Decided March 29, 1976.

John J. Mahoney, Sr., Trial Atty., Bureau of Enforcement, I. C. C., Washington, D. C., for appellant-appellee; Bernard A. Gould, Dir., Bureau of Enforcement, I. C. C., Washington, D. C., on brief.

Frank W. Davis, Jr., Des Moines, Iowa, Christopher A. Mills, Chicago, Ill., for appellees-appellants.

Before GIBSON, Chief Judge, and STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

The Interstate Commerce Commission instituted this action pursuant to 49 U.S.C. § 1(20) seeking preliminary and permanent injunctive relief against the Chicago and North Western Transportation Company (North Western) and its president, Larry S. Provo. See 28 U.S.C. §§ 1337, 1345. Specifically, the Commission seeks to restrain North Western from an allegedly unlawful abandonment of a thirty-mile branch line of railroad in central Iowa and to require North Western to repair and operate the line.

The branch line at issue extends from Railway Milepost 239.6 at Minerva Junction, Iowa, in a northwesterly direction to Milepost 269.6 near Roland, Iowa, and is commonly referred to as the "Roland line". The Roland line was constructed in 1881 by

a predecessor of the Minneapolis and Saint Louis Railway Company. Chicago and North Western Railway Company acquired the line in 1960, and North Western obtained the line as well as substantially all of the other transportation assets of Chicago and North Western Railway Company on June 1, 1972.

Train service on the Roland line during the past ten years has been scheduled to be provided once per week, subject to weather and track conditions.[1] Service originates at Marshalltown, Iowa, and operates to Roland and returns, covering a total distance of 67.2 miles. Pursuant to the decisions of operating officers of both North Western and its predecessor that the Roland line was unsafe or below the minimum requirements of the Federal Railroad Administration's track safety standards, the line has been informally removed from service at various times and was the subject of a formal embargo from October 21, 1968, through February 5, 1969.[2]

In December, 1974, further deterioration of the track and an increased frequency of derailments was apparent, and the Roland line became, in the opinion of the North Western's Central Division manager, impassable and unsafe for rail traffic. In view of these conditions, and the inadequacy of funds allocated by North Western to the Central Division for the maintenance and improvement of trackage, the manager requested North Western to place the Roland line under embargo.

On December 27, 1974, traffic originating at or destined to the six stations on the Roland line was embargoed by North Western pursuant to 49 C.F.R. § 1006.1 and the line was removed from service. North Western submitted the poor condition of the trackage and the lack of compliance with Federal Railroad Administration standards as the reasons for the embargo. On January 9, 1975, an amendment to the embargo was entered, inserting an expiration date of March 26, 1975. On March 10, 1975, a further amendment extended the expiration date to November 25, 1975. In November, 1975, North Western amended its tariffs to indicate that, although the stations located on the Roland line were in existence, it was unable to provide freight service at those stations.

On January 31, 1975, North Western filed an application for a certificate of public convenience and necessity permitting abandonment of the Roland line with the Interstate Commerce Commission pursuant to 49 U.S.C. § 1(18).[3] The Commission initiated this action on May 29, 1975, and the matter of permanent injunctive relief came to trial before the District Court on August 19, 1975.

The District Court[4] found that the unsafe track conditions that required cessation of service were caused by the neglect of North Western to provide proper mainte-

---

1. The trackage on the Roland line is of a dated nature, and could accommodate only forty-foot boxcars when in good condition. These vehicles are considered to be of limited utility for the future rail movement of grain, given the advent of one hundred-ton covered hopper cars.

2. An "embargo" is a carrier-initiated measure, executed by the filing of public notice with the Interstate Commerce Commission, which relieves a carrier temporarily from providing service when such performance is precluded by "compelling circumstances not within the control of the carrier". 49 C.F.R. § 1006.1(a). *See Interstate Commerce Comm'n v. Maine Central R. R.,* 505 F.2d 590, 593 (2d Cir. 1974); *Interstate Commerce Comm'n v. Chicago, R. I. & Pac. R. R.,* 501 F.2d 908, 911 (8th Cir. 1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1393, 43

L.Ed.2d 652 (1975); *Froehling Supply Co. v. United States,* 194 F.2d 637, 641 (7th Cir. 1952). It does not, however, relieve the carrier from its duty to furnish transportation services. 49 C.F.R. § 1006.4. Once an embargo is in effect, the Commission has the power under 49 U.S.C. §§ 1(4), 1(6), 1(11), and 13(2) to determine the reasonableness thereof and to order it cancelled should it be found to be imposed or contrived without legal justification.

3. The application was assigned Docket No. AB–1 (Sub. No. 45) by the Commission, and a hearing was held on the application on January 20, 1976, at Marshalltown, Iowa.

4. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa.

nance for the line. Considering the absence of any attempt by North Western to repair the line pending the outcome of the abandonment proceeding, the court found that the railroad had discontinued service with the intent to do so indefinitely or permanently and had thus unlawfully abandoned the line within the meaning of 49 U.S.C. § 1(18). The District Court further held, however, that the issuance of injunctive relief pursuant to 49 U.S.C. § 1(20) was a matter of discretion, and that such relief was not warranted under the present circumstances.

The Commission appeals, contending that the District Court is without discretion under 49 U.S.C. § 1(20) and must issue an injunction as a matter of right once an unlawful abandonment is established. North Western cross-appeals, claiming that the District Court was without jurisdiction under the doctrine of primary jurisdiction and that its finding of abandonment was clearly erroneous. For chronological purposes, the contentions of North Western will be addressed first. We affirm the judgment and decree of the District Court.

## I

### Primary Jurisdiction

■ North Western contends that the imposition of the embargo should have precluded the District Court from considering whether an unlawful abandonment had occurred because the determination of the reasonableness of the embargo lies within the primary jurisdiction of the Commission.[5] This Court rejected this argument in *Interstate Commerce Commission v. Chicago, R. I. & Pac. R. R.,* 501 F.2d 908, 912–14 (8th

Cir. 1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975), holding that the federal courts may proceed to determine whether an embargo has been transmitted into an illegal abandonment without prior resort to the Commission. *See Interstate Commerce Commission v. Maine Central R. R.,* 505 F.2d 590, 594 (2d Cir. 1974). We decline to modify this decision, and thus turn to a review of the finding of the District Court that an abandonment had occurred and its refusal nonetheless to issue an injunction.

## II

### Abandonment

■ Abandonment of a line of railroad by a rail carrier without its first obtaining a certificate that the present or future public convenience and necessity permit such abandonment is prohibited by 49 U.S.C. § 1(18) and may be enjoined under 49 U.S.C. § 1(20). "Abandonment", unlike an embargo, is characterized by an intention of the carrier to cease permanently or indefinitely all transportation service on the relevant line. *Interstate Commerce Commission v. Maine Central R. R., supra,* 505 F.2d at 593; *Interstate Commerce Commission v. Chicago, R. I. & Pac. R. R., supra,* 501 F.2d at 911 ("Factually, determination of the question revolves around the intent of the railroad * * *").

■ Service over the Roland line has ceased through the mechanism of carrier-imposed embargo, which justifies such cessation as a temporary emergency measure when the carrier is unable to perform its duty as a common carrier on that line.[6] The record indicates that the reason for this

5. "Primary jurisdiction," * * * applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.
   *Izaak Walton League of America v. St. Clair,* 497 F.2d 849, 852 (8th Cir.), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974),

quoting *United States v. Western Pac. R. R.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126, 131–132 (1956). *See Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576, 582 (1952). *See generally* 3 K. Davis, *Administrative Law Treatise,* §§ 19.01–.02 (1958); Jaffe, *Primary Jurisdiction,* 77 Harv.L.Rev. 1037 (1964); Convisser, *Primary Jurisdiction: The Rule and its Rationalizations,* 65 Yale L.J. 315 (1956).

6. *See* note 2, *supra.*

embargo was the deterioration of the track to the point that it no longer complied with Federal Railway Administration safety standards and could in fact no longer safely handle traffic. The mere presence of an embargo, however, does not preclude a finding that the line has in actuality been abandoned by the carrier. *See Interstate Commerce Commission v. Maine Central R. R., supra,* 505 F.2d at 593–94; *Interstate Commerce Commission v. Baltimore & A. R. R.,* 398 F.Supp. 454, 463 (D.Md.1975).

■ The District Court concluded that North Western intended to cease service permanently or indefinitely on the Roland line primarily upon the basis of the following findings: (1) the "prime factor" causing deterioration of the line was the failure of North Western to expend sufficient funds for effective maintenance over the years; (2) North Western has the financial ability to undertake proper maintenance and the necessary repairs; and (3) North Western has no intention to resume service on the line pending the outcome of the abandonment petition before the Commission. These findings, including the ultimate finding of intention to abandon, have substantial support on the record and are not clearly erroneous. Neither North Western's limited financial condition nor its qualified intention to delay resumption of service until the Commission rules on the formal application precludes a finding of abandonment. *See Meyers v. Jay Street Connecting R. R.,* 259 F.2d 532, 534–36 (2d Cir. 1958).

### III

#### Injunctive Relief

■ Having properly concluded that an abandonment of the Roland line had occurred, the District Court turned next to a consideration of the Commission's demand for injunctive relief. The Commission contends that once an unlawful abandonment is found, it has an absolute right to an injunction pursuant to 49 U.S.C. § 1(20), and that the District Court thus had no discretion to deny the injunction on the basis of equitable principles. We rejected this contention in *Interstate Commerce Commission v. Chicago, R. I. & Pac. R. R., supra,* where we noted that 49 U.S.C. § 1(20) clearly implied the existence of discretion, and more specifically held as follows:

> In cases where a court has been confronted with a physical impossibility of operation without substantial expenditures for repair, the determination as to whether to issue an injunction has been viewed as one of equity, whether it would be equitable to require substantial expenditures when shortly thereafter the Commission may approve the railroad's abandonment application.

501 F.2d at 914.

■ Here, the abandonment proceedings before the Commission are expected to be resolved within a reasonable period of time.[7] Thus, while shippers on the Roland line must undergo the burden of the interim cessation of service, abandonment should soon be either authorized or denied. Given the limited financial condition of North Western, it cannot be said that the District Court abused its discretion in refusing to compel expenditures [8] by North Western on a preliminary basis which may be rendered wasteful in a matter of months.

In summary, we hold that (1) the District Court had jurisdiction to hear the action under 49 U.S.C. § 1(20); (2) the finding and conclusion of the District Court that the Roland line was abandoned is supported by substantial evidence and is not clearly erroneous; and (3) the District Court properly exercised discretion under 49 U.S.C. § 1(20) and did not abuse this discretion in refusing to grant injunctive relief under the facts of this case.

Affirmed.

---

7. The District Court's Memorandum was filed September 10, 1975. The Commission had represented that a proposed order on North Western's application could be expected in December, 1975, with a final determination by following summer.

8. The District Court found the estimated net cost of such repairs to be $650,000.