### UNITED STATES v. ESTES.

### SAME v. KINNETT.

(District Court, N. D. Illinois, E. D. April 4, 1924.)

Nos. 12324, 12330.

1. **Carriers ⊕⊃38—Indictment of agent of Pullman Company for violation of Interstate Commerce Act not required to allege employment by railroad carriers transporting sleeping cars.**

Indictment, under section 10 of Interstate Commerce Act Feb. 4, 1887, as amended (Comp. St. § 8574), of agent of Pullman Company for accepting less than legal rate for transportation in sleeping car, *held* not required to allege that accused was employed by railroad companies transporting the sleeping cars, or state the exact relations between defendant and carriers or the proportions of fares collected chargeable to transportation, sleeping car accommodations, and surcharge.

2. **Indictment and information ⊕⊃125(41)—Indictment of employee of Pullman Company for accepting less than legal fare not subject to charge of duplicity.**

Indictment, under section 10 of Interstate Commerce Act Feb. 4, 1887, as amended (Comp.

St. § 8574), of employee of Pullman Company for accepting less than legal fare for transportation between points over three railroads, *held* not subject to charge of duplicity, notwithstanding fare involved service of transportation and sleeping car accommodations; service rendered being a single one, involving several elements for which a certain specific rate had been prescribed.

**3. Carriers ⚙⇒38 — Violation of Interstate Commerce Act by accepting less than legal fare held not to require collusion between carrier and agents.**

Violation by carrier's agent of section 10 of Interstate Commerce Act Feb. 4, 1887, as amended (Comp. St. § 8574), by the transportation of passenger for less than legal fare, *held* not to require collusion between carrier and accused agent; purpose of act being to establish a reasonable and uniform rate for service, making all other rates unlawful and any violation a misdemeanor, irrespective of any collusion.

At Law. Criminal prosecutions by the United States against Martin E. Estes and Clifford L. Kinnett. On demurrer to indictment. Demurrer overruled.

The pertinent portions of indictment are as follows:

### Part I.

That at all times hereinafter mentioned in this indictment, the Nashville, Chattanooga & St. Louis Railway Company and the Louisville & Nashville Railroad Company and the Chicago & Eastern Illinois Railway Company were corporations and common carriers engaged in the transportation of property and persons for hire, wholly by railroad, between Chicago, in the state of Illinois, being a point on the railroad lines of said Chicago & Eastern Illinois Railway Company, over a jointly established through route, and Atlanta, in the state of Georgia, being a point on the railroad lines of said the Nashville, Chattanooga & St. Louis Railway Company, and also from said point of Atlanta, in the state of Georgia, to said point of Chicago, in the state of Illinois, which common carriers are hereinafter in this indictment referred to as railroad companies.

That at all times hereinafter mentioned in this indictment, the Pullman Company was a corporation, created and existing under the laws of the state of Illinois, and was a sleeping car company common carrier, engaged in the operation of sleeping cars upon and over the lines of railroad of the aforesaid railroad companies, and that at all times hereinafter mentioned in this indictment all of the said common carriers, to wit, the Pull-

man Company and the Chicago & Eastern Illinois Railway Company and the Louisville & Nashville Railroad Company and the Nashville, Chattanooga & St. Louis Railway Company were subject to the provisions of an Act of Congress entitled "An act to regulate commerce," approved February 4, 1887, and of the Acts of Congress amendatory thereof and supplementary thereto (Comp. St. § 8563 et seq.).

That at all times hereinafter mentioned in this indictment, one Martin E. Estes, late of the city of Atlanta, in the state of Georgia, hereinafter called defendant, was an employee of, and employed by, and was acting for, said the Pullman Company, and as such employee had under his management and control, and was in charge of, sleeping cars then and there being operated by said the Pullman Company, with which he journeyed betweeen said points of Chicago, Ill., and Atlanta, Ga., over the said joint through route of railroad of the said Chicago & Eastern Illinois Railway Company and the Louisville & Nashville Railroad Company and the Nashville, Chattanooga & St. Louis Railway Company, and was during all of the time hereinafter mentioned also acting for said railroad companies, corporation common carriers, as aforesaid.

### Part II.

That on, to wit, February 10, 1923, the said defendant, while acting in his capacity as such employee of said the Pullman Company, and while acting for said railroad companies, corporation common carriers, as aforesaid, furnished transportation for one James W. Ashton as a passenger, and also furnished said James W. Ashton sleeping car accommodations, to wit, upper berth 5, in a certain sleeping car of the said Pullman Company, known as Pine Grove, then and there being operated by said the Pullman Company, over the lines of the aforesaid common carrier railroad companies and over said through route, from the city of Chicago in the state of Illinois, to the city of Atlanta in the state of Georgia, for which said transportation and said sleeping car accommodations of said James W. Ashton, as such passenger, said defendant unlawfully, willfully, knowingly, and feloniously collected as full compensation the sum of $20, which said sum of $20, as said defendant well knew, was a different compensation from that provided for, and legally established for, such transportation and sleeping car accommodations. That the lawful and regularly es-

tablished joint through rate of fare of said railroad companies for the transportation of said passenger from Chicago, Ill., to Atlanta, Ga., over said through route, was $26.72, and that the lawful and regularly established rate of said the Pullman Company, for said sleeping car accommodations for said passenger, including the lawful and regularly established railroad surcharge, was $6.60; said lawful rate of fare of said railroad companies, and said lawful rate for sleeping car accommodations of the said Pullman Company, and said lawful railroad surcharge, having been established by tariffs duly printed and published and filed by said common carriers with the Interstate Commerce Commission, as required by law, and being on file with said Commission, and in force and effect at the time of the transportation of said passenger.

And the grand jurors aforesaid, upon their oath aforesaid, do further present that, at the time said defendant furnished said transportation and said sleeping car accommodations for said James W. Ashton, as aforesaid, the said James W. Ashton did not belong, and did not represent himself to said defendant as belonging, to any one of the excepted classes mentioned in the aforesaid acts of Congress, to the members of which it is lawful for common carriers, subject to the provisions of said acts, to issue and give free transportation or reduced rates of fare, nor did said James W. Ashton, at the time aforesaid, possess or present to said defendant any pass, ticket, or order from any of the aforesaid common carriers, entitling or purporting to entitle him to free transportation or reduced rates of fare, against the peace and dignity of the United States, and contrary to the form of the statute of the same in such case made and provided.

Edward J. Hess, Sp. Asst. U. S. Atty., of Chicago, Ill.

Robert W. Childs, of Chicago, Ill., for defendants.

FITZHENRY, District Judge. Defendants demur to the indictments herein, for the reason that they are vague, indefinite, uncertain, and duplicitous, as well as assigning several special causes for demurrer.

[1] As to the first i. e., said indictment does not allege that the defendants were employed by said railroad corporations, or either of them, etc. The indictment shows with sufficient clarity that three certain railroads were corporations and common carriers, engaged in the business of transporting property and persons from Chicago, Ill., to Atlanta, Ga.; that the Pullman Company was a sleeping car common carrier, engaged in operating cars over the three named lines from the city of Chicago to Atlanta; that this defendant was an employee of the Pullman Company, and, while acting for it as such, upon a certain day, he carried in his car from Chicago to Atlanta certain persons, for a rate much below the legal rate —that is, for $20, full compensation, whereas the legal rate for the railroad transportation was $26.72 and for sleeping car accommodation $6.60; that the legal rates for the service rendered each of the passengers named in these two indictments were the lawful rates, "established by tariffs duly printed, published, and filed by the common carriers involved with the Interstate Commerce Commission, and being in force and effect at the time of the transportation of the passenger."

We believe this charge sufficiently advises the defendants as to the nature and character of the charge laid against them. It was unnecessary to charge that the defendants were acting for all of the common carriers involved in the illegal transaction. It is sufficiently shown that the particular defendants were the employees of the Pullman Company, or acting for it, and had under their management and control, and were in charge of, certain sleeping cars; that there was a joint through route established in which all of the carriers mentioned rendered some service. It is immaterial so far as these proceedings are concerned just what proportion of the fares collected were for transportation, sleeping car accommodations, and surcharge. All of them added together under the established tariffs constituted the legal rate, and it was unlawful for any of the corporations, or anybody connected with any of them, to render the joint service for anything less than the aggregate of the several elements as provided by the tariffs. The indictments charge that each of the defendants named in them did this thing and each count charges that upon a certain date a certain particularly named person or persons was or were transported as therein alleged from Chicago to Atlanta, for the price therein named.

There is nothing in the contention that the defendant in each indictment should be advised by the indictment of the facts upon which the allegation is made, making the actual collection unlawful. The specific allega-

tions above referred to as to the price collected, the price which should have been collected, and the latter was the aggregate of the tariffs for the service rendered, is a sufficiently specific statement.

The fourth and fifth special causes are answered by what has already been said.

Defendants cannot be heard to say that these indictments are defective because they do not show more specifically the exact relationship between the defendants and the named railroad companies. The indictments state sufficiently the through route, the through rate, charge each of the defendants with being employees of the Pullman Company, that each of them was in a position to do the things with which they were charged, and that they did those things in violation of section 10 of Act Feb. 4, 1887, as amended (Comp. St. § 8574).

[2] The charge of duplicity cannot be sustained. The service which the defendants are charged with having rendered was a single service over a joint route, and for which a specific rate had been ascertained according to law. It involved the service of transportation and sleeping car accommodations. The mere fact that the offense itself might be divided into several offenses would not change the character of service rendered in the specific instances charged in these indictments. So far as the passenger in each instance was concerned, he was rendered a service, involving several elements, for which a certain specific rate had been prescribed, and, by reason of the unlawful conduct of the defendants, this service was rendered at a price considerably below the legal rate therefor.

[3] The contention that the words "acting for or employed by," in connection with part of section 10, involved the charge of collusion between the carrier and the one acting for the carrier, cannot be sustained. To construe section 10 so narrowly would be to open the floodgates to a line of violations of the Interstate Commerce Law which would be exceedingly detrimental to the public interest. It was undoubtedly the intention of Congress to put an end to discriminations against certain persons and in favor of others using the facilities of a carrier. It is argued that, while the line of conduct charged in the indictments in these cases might have amounted to fraud or graft, still it did not amount to a violation of section 10. It was undoubtedly the purpose of Congress to hold for criminal misconduct, not only the carrier, but any officer, director,

agent, or other person acting for or employed by the carrier who might be in control of the facilities for rendering service, or the service, which the passenger desired to use.

The statute very clearly says: "* * * whenever such common carrier is a corporation, any * * * person acting for or employed by such corporation, who, alone or with any other * * * person, or party, shall wilfully do or cause to be done, or shall willingly suffer or permit to be done, any act, matter, or thing in this act prohibited or declared to be unlawful, or who shall aid or abet therein * * * shall be deemed guilty of a misdemeanor. * * *"

The whole purpose of the Interstate Commerce Act is to secure public service at reasonable and uniform rates. It has either fixed rates or laid down certain principles for the guidance of the Commission in doing so. Among these is the method for ascertaining the reasonable and uniform rate for the service. That rate having beeen ascertained, all other rates become unlawful and any corporation or person who sells or attempts to sell or furnish a service for a different rate, violates the spirit as well as the letter of the law, and commits a misdemeanor under section 10.

The demurrer will be overruled.