**HOWITT et al. v. UNITED STATES.**

No. 11287.

Circuit Court of Appeals, Fifth Circuit.

June 14, 1945.

Rehearing Denied July 18, 1945.

Writ of Certiorari Granted Oct. 15, 1945.

See 66 S.Ct. 92.

Bart A. Riley and A. C. Dressler, both of Miami, Fla., for appellants.

Irvin Goldstein, Asst. to Atty. Gen., Ernest L. Duhaime, Asst. U. S. Atty., of Miami, Fla., and Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellee.

Before HOLMES, McCORD, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

Appellants Howitt and Dewhurst, ticket sellers of the Florida East Coast Railway Company, and appellant Lee, diagram clerk for the railroad, all located at Miami, Florida, were indicted for conspiracy to violate the Interstate Commerce Act[1] by agreeing together and with other persons unknown to charge and collect from purchasers of transportation accommodations money in excess of the regular fares currently in force under prevailing tariffs for such service. Appellant O'Rourke, a ticket seller for the same carrier in Miami, was charged on an indictment in ten counts with committing substantive offenses in violation of the act in substantially the same manner as alleged in the conspiracy charge. The indictments were consolidated and tried together; the defendants were convicted and have appealed.

It is contended that the trial court erred in

1. Overruling demurrers to the indictments;

2. Sustaining demurrers to the pleas in bar;

3. Overruling defendants' motion for a directed verdict based upon the insufficiency of the evidence; and

4. Giving certain instructions to the jury.

The demurrers to the indictments were grounded upon the theory that the Interstate Commerce Act, the aim of which was the prevention of discrimination by carriers, did not create any offense against others than carriers except where the carrier was the principal offender and individuals aided and abetted. Upon this premise it is argued that, since these indictments charged violations by individuals only, without alleging the participation or connivance of any carrier, the indictments charged no offense against the United States.

While it is probable that the legislative mind did not foresee offenses of this particular character when the law was passed, nevertheless the act was drafted in language sufficiently broad to include such offenses by individual employees of a carrier, especially where the offenses resulted in the unjust discrimination that the act was designed to prevent.[2] Section 1(5) of the act requires that all charges made for any service rendered in the transportation of passengers shall be just and reasonable. The schedule of rates required to be established, published, and filed with the Interstate Commerce Commission, is prima facie the criterion in determining whether or not a charge is reasonable.[3] Section 2 of the act provides that no carrier shall receive from any person a greater or less compensation for any service in the transportation of passengers than it received from any other person for the same service. Section 10 of the Act provides that where the carrier is a corporation, any person employed by the corporation who willfully does anything prohibited or declared unlawful by the act, or aids and abets therein, shall be guilty of a misdemeanor.

This question has been raised and decided in other cases. In United States v. Peterson, D.C., 1 F.2d 1018, a demurrer was sustained to a similar indictment on the very ground that is here urged, namely, that since no common carrier was charged with guilt as a principal, the carrier's employees could not be guilty because they were not of the class that alone could commit the acts denounced as offenses by the statutes. This district court opinion stands alone, according to our research, and the great weight of authority is on the other side.

In United States v. Tozer, D.C., 37 F. 635, 639, 2 L.R.A. 444, the demurrer to a similar indictment was overruled on the ground that "when an agent of a railroad is prosecuted under the statute for an unlawful act, it is not necessary * * * ei-

---

[1] 49 U.S.C.A., § 1 et seq.

[2] Interstate Commerce Commission v. Baltimore, 145 U.S. 263, 12 S.Ct. 844, 36 L.Ed. 699; Texas, etc., R. Co. v. Interstate Commerce Commission, 162 U.S. 197, 16 S.Ct. 666, 40 L.Ed. 940; Louisville & N. R. Co. v. United States, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed. 672; Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; L. M. Kirkpatrick Co. v. I. C. R. Co., 190 Miss. 157, 195 So. 692, 135 A.L.R. 607.

[3] Kinnavey v. Terminal R. Association of St. Louis, C.C.Mo., 81 F. 802.

ther to allege or prove that the particular unlawful act complained of was done under authority conferred by his principal, or by its direction." The Tozer case was expressly approved by Judge Taft in Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co., C.C.Ohio, 54 F. 730, 19 L.R.A. 387. There a locomotive engineer was held subject to the penalties of Section 10 of the Interstate Commerce Act where he, while acting as engineer, refused to handle interstate freight for a shipper, the court saying that it was immaterial whether what he did or failed to do was with or without the orders of his principal. The well-reasoned opinion in United States v. Estes, D. C., 6 F.2d 902, is to the same effect, and the Supreme Court recently held in Union Pacific R. Co. v. United States, 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453, that action by any person to bring about discrimination in respect to the transportation of property is made unlawful by the Elkins Act, 49 U.S.C.A. §§ 41–43. Considerations similar to those here mentioned led the court to adopt this view. These authorities, together with the thought that any other conclusion would do violence to the purpose of the act, constrain us to hold that the demurrers to the indictments were properly overruled.

The plea in bar to each indictment was based upon the claim that the defendants were made witnesses against themselves under legal compulsion, and that the evidence so produced was used to indict and convict them, wherefore they were entitled to the immunity extended by Sections 43, 46, and 47 of 49 U.S.C.A. These statutes provide that in summary proceedings in the district court, or in hearings before the Interstate Commerce Commission, or in any other cause or proceeding, where the purpose of the proceeding is to inquire into alleged violations of the act, no person shall be prosecuted or subjected to any penalty or forfeiture for any matter concerning which he may testify or produce evidence in such proceeding.

On March 3, 1944, warrants for the arrest of the defendants were issued to the Federal Bureau of Investigation for violations of the Interstate Commerce Act. On March 4, 1944, agents of the F. B. I. separately asked each of the defendants to come to their offices for interrogation. The warrants were not then produced, and the defendants were not then arrested, but each came willingly. After being separately questioned for four or five hours, each signed a statement that set forth the facts given in response to questions asked. They were then arrested, arraigned, and granted bail. Several days later, the agents again questioned each defendant, but no claim is made that any statement given was induced by wrongful means.

■ Section 48 of 49 U.S.C.A. reads as follows: "Under the immunity provisions in sections 43, 46, and 47 immunity shall extend only to a natural person who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise, under oath." This statute requires no elucidation. We need only observe that, since the evidence produced by the defendants was not given in response to a subpœna and was not under oath, it did not come within the cited immunity provisions.

■■ We need not pause long upon the third and fourth assignments. The railroad company by whom these defendants were employed was a common carrier subject to the Interstate Commerce Act, and its lawful rates had been filed with the Interstate Commerce Commission. The rates specified therein were the only charges that could legally be exacted for the services rendered.[4] The evidence adduced upon the trial proved beyond question that the defendants repeatedly and systematically took advantage of the prevailing war-time congestion in transportation to exact from applicants for accommodations more money than the regular rate prescribed, and appropriated the difference to themselves. It is also clear that the excess payment ordinarily was not a gratuity given for service, but a substantial fee paid as a condition precedent to securing a ticket, and that in either event the necessary result of the overcharge was to assess rates in excess of prevailing tariffs and to discriminate between passengers. This evidence not only warranted the submission of the case to the jury, but also made appropriate the instructions to which exceptions were taken. The crucial question for the jury was whether the offenses charged

---

4 Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A.1915E, 665; Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943.

had been committed; the method thereof had no legal significance.[5]

Affirmed.

[5] New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 398, 26 S.Ct. 272, 50 L.Ed. 515; Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; Union Pacific R. Co. v. United States, 313 U.S. 450, 462, 61 S.Ct. 1064, 85 L. Ed. 1453.