HOWITT ET AL. *v.* UNITED STATES.

No. 354.   Argued January 4, 1946.—Decided May 6, 1946.

*Bart. A. Riley* submitted on brief for petitioners.

*Walter J. Cummings, Jr.* argued the cause for the United States.   With him on the brief were *Solicitor General McGrath, Robert S. Erdahl* and *Beatrice Rosenberg.*

*Willard H. McEwen* filed a brief for the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, as *amicus curiae*.

Mr. Justice Black delivered the opinion of the Court.

The wartime transportation shortage during the winter of 1943 made it exceedingly difficult to obtain tickets for trains going north from Miami, Florida. Petitioners are three ticket sellers and one diagram clerk who were employed at that time by a railroad at Miami. Petitioners Howitt, Lee, and Dewhurst were charged with, and convicted for, conspiracy to violate the Interstate Commerce Act, 49 U. S. C. § 1 *et seq.*, in that they conspired to collect and receive unjust and unreasonable charges for passenger transportation, in violation of § 1 (5) (a); to receive and collect greater compensation for service from certain persons than that which would be collected from others, in violation of § 2; to prefer particular persons to the disadvantage of others, in violation of § 3 (1); and to collect and receive compensation in excess of that fixed by tariff schedules, in violation of § 6 (7). These violations are made a crime by § 10.[1] Petitioner

---

[1] Section 10 reads in part as follows:

"Any common carrier subject to the provisions of this part, or, whenever such common carrier is a corporation, any director or officer thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by such corporation, who, alone or with any other corporation, company, person, or party, shall willfully do or cause to be done, or shall willingly suffer or permit to be done, any act, matter, or thing in this part prohibited or declared to be unlawful, or who shall aid or abet therein, or shall willfully omit or fail to do any act, matter, or thing in this part required to be done, or shall cause or willingly suffer or permit any act, matter, or thing so directed or required by this part to be done not to be so done, or shall aid or abet any such omission or failure, or shall be guilty of any infraction of this part for which no penalty is otherwise provided, or who shall aid or abet therein, shall be deemed guilty of a misdemeanor . . ."

O'Rourke was charged with and convicted for committing substantive offenses of the same nature.[2] The Circuit Court of Appeals affirmed. 150 F. 2d 82. We granted certiorari because this case raises important questions concerning the scope of the Act.

The Government charged that there was a working agreement between petitioners and certain local hotel employees under which persons anxious to purchase railroad tickets would, in order to obtain them, pay amounts in excess of published rates either to petitioners directly, or to the hotel employees who in turn would divide the excess payments between themselves and petitioners.[3]

---

[2] Ordinary violations of the Act are under § 10 punished only by imposition of a fine. But a proviso imposes a prison term if the violation consists of an unlawful discrimination. Petitioner O'Rourke contends that he was charged only with violating § 6 (7) rather than § 2, which is the unlawful discrimination section, and that he therefore could not be imprisoned under § 10. This contention is frivolous. The O'Rourke indictment clearly and explicitly also charges a violation of § 2.

[3] An amicus brief filed with us contains the suggestion that a rather extensive paragraph of the court's charge to the jury, to which exception was noted, contains language susceptible of the construction that acceptance of a "bona fide tip" might constitute a violation of the Interstate Commerce Act. We think that that language read in its context does not relate to bona fide tips but rather to excess charges which the prospective passenger was forced to pay and which were made to look like tips. Moreover, this paragraph of the charge also contains instructions that employees acting alone without participation by the railroad might be found guilty of violating the Act. The exception to the paragraph was a general one. In view of what petitioners argue here, what they argued on demurrer, and on the motion for directed verdict, it is likely that the exception was directed to these last-mentioned instructions and not to the language challenged by the amicus brief. Indeed, petitioners introduced no evidence to show that they were receiving bona fide tips, nor did they request any charge on the basis of this theory. If petitioners in excepting to the challenged paragraph of the charge had the "bona fide" tip ques-

The railroad played no part in these transactions. The Government produced a great deal of evidence to support these charges.[4] Petitioners offered no testimony or other kind of evidence to contradict that produced by the Government. Their only contention was raised on demurrer, motion for directed verdict and exception to the charge of the jury. This contention, urged on several different grounds, was that the indictment failed to charge, and the evidence failed to establish a crime, since the Interstate Commerce Act and § 10 in particular are primarily aimed at railroads and do not make discriminatory and illegal charges by railroad employees for passenger transportation criminally punishable, unless the railroad is itself a party to the conduct. This is still the basis of petitioners' arguments.

It is well established that one of the primary aims of the Interstate Commerce Act and the amendments to it was to establish uniform treatment of users of transportation facilities. See *Mitchell* v. *United States,* 313 U. S. 80, 94, 95. The Act again and again expressly condemns all kinds of discriminatory practices. Railroad employees can accomplish invidious transportation discrimination, whether or not their conduct is approved or participated in by their superiors. Not only do the Act's provisions against discrimination and special favors fail to exempt

---

tion in mind they should have specifically pointed this out to the trial court. See *Allis* v. *United States,* 155 U. S. 117, 121–123. The issue raised by the amicus brief as to whether the Act covers bona fide tips is therefore not before us.

[4] The Circuit Court of Appeals said that this evidence "proved beyond question that the defendants repeatedly and systematically took advantage of the prevailing war-time congestion in transportation to exact from applicants for accommodations more money than the regular rate prescribed, and appropriated the difference to themselves."

employees such as petitioners; but § 10 standing alone shows the clearest possible purpose to bar all railroad employees from overcharging for their own or for the railroad's illegitimate gain. The Interstate Commerce Act imposes the same duty on ticket sellers and clerks of common carriers as that imposed on railroad officers or other employees: to treat all the public alike as to the terms and conditions of transportation. Railroad accommodations are thus not to depend upon who will or can pay more because of greater need or a longer purse. See *United States* v. *Estes,* 6 F. 2d 902, 905.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.