## UNITED STATES of America
### v.
## PEP TRUCKING COMPANY, Inc., a corporation, Defendant.
### Crim. A. No. 218-66.

United States District Court
D. New Jersey.
Dec. 7, 1966.

David M. Satz, Jr., U. S. Atty., by Jerome D. Schwitzer, Asst. U. S. Atty., Daniel M. O'Donoghue, Dept. of Justice, for the Government.

Herman B. J. Weckstein, Newark, N. J., for defendant.

OPINION

WORTENDYKE, District Judge:

In a twenty-count Information, Pep Trucking Company, Inc. (Pep), a New Jersey corporate motor carrier, is charged with violations of Section 1(1) of the Elkins Act, 49 U.S.C. § 41(1), alleged to have occurred on various dates in connection with the interstate transportation by Pennsylvania Railroad Company for Chesapeake Corporation of Virginia of shipments of merchandise from West Point, Virginia to Jersey City, New Jersey, but consigned to Chesapeake at the Desbrosses Street Station of the railroad in New York City. Each count of the information charges that Pep did knowingly, by means of a device, accept from the railroad a rebate, "whereby said shipment was transported at a less rate and charge than that named in the tariffs of the Pennsylvania Railroad published and on file with the Interstate Commerce Commission; that is to say that defendant, Pep Trucking Company, Inc., received said rebate by the device of billing and receiving from the Pennsylvania Railroad Company 10¼ cents per hundred-weight for cartage of the aforesaid shipments from Jersey City, New Jersey to Desbrosses Street Station, New York, New York, a service which defendant, Pep Trucking Company, Inc. did not perform."

Pep waived jury trial and has moved to dismiss the Information upon the asserted grounds that (1) the Information does not state facts sufficient to constitute an offense against the United States, and (2) the Information does not state facts sufficient to charge an offense under the Elkins Act, U.S.C. Title 49, Section 41(1). The motion was briefed and orally argued.

More specifically, Pep contends that:

"(1) There has been no rebate granted by the railroad nor solicited, accepted or received by defendant, Pep Trucking Company;

(2) There is no device by which the defendant, Pep Trucking Company has received a rebate from the Railroad;

(3) The Pep Trucking Company is not a person nor corporation intended to be covered by the prohibitions of the Elkins Act."

Pep insists that "rebate", as used in the Commerce Act, means "such discount, deduction or drawback as is the basis of a discrimination in favor of a particular person and against other persons in a like situation, and destroys that equality of treatment in rates, to which the public are entitled and which is the great purpose of the law to enforce." Tested by that definition, says Pep, the particulars of the offense charged do not add up to a "rebate". Such is not the case. The rebate was received by Pep from the railroad by the device of payment for a service not performed, i. e., transportation of the shipment from Jersey City, New Jersey to Desbrosses Street Station in New York City, a service for which the shipper was charged by the railroad and thus discriminated against. The rebate charged is found in the device whereby the shipment was transported at a lesser rate to the railroad than that published and filed by the railroad.

"[T]he Elkins Act outlaws solicitations of rebates by any person whatever, no matter for whose benefit the rebate is sought, * * *. Section 1 aims in unmistakable language at preserving published tariffs inviolate. That section, first, makes it a misdemeanor for a carrier to fail 'strictly to observe' published tariffs and, second, goes right on to make it unlawful 'for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination' as to interstate shipments of property 'whereby any such

property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier * * *.' More unequivocal language would be hard to imagine. It strikes at any and every kind of rebate, no matter by whom or to whom given. * * * It is a rebate, to whomever given, which the statutory language proscribes." United States v. Braverman, 373 U.S. 405, 406, 83 S.Ct. 1370, 1371, 10 L.Ed.2d 444 (1963).

In *Braverman,* supra, the defendant was transportation manager of an interstate shipper. He was charged with having violated § 1 of the Elkins Act by having knowingly solicited, from a freight forwarder, concessions and rebates respecting interstate motor carrier shipments of his employer's products "so that, had the rebates been granted, goods would have been shipped at a lower rate than that named in the applicable tariffs filed with the Interstate Commerce Commission." The indictment did not allege nor did the Government intend to prove, that the rebate would have been for the benefit of the shipper. The trial court therefore dismissed the indictment and the Government appealed. The dismissal was reversed upon the interpretation of the statute expressed in the foregoing quotation from the Supreme Court's Opinion. That Court construed the language of the statutory proscription as expressive of the Congressional objective to ensure carrier efficiency by maintaining unimpaired published tariff rates; adding, p. 408, 83 S.Ct. p. 1372, that "the Elkins Act no more intended to allow third persons to tamper with the statutory scheme than it intended to allow carriers and shippers themselves to do so." The Court cited as analogous the factual situation involved in Howitt v. United States, 328 U.S. 189, 66 S.Ct. 923, 90 L. Ed. 1162 (1946), in which it had held that railroad employees who charged passengers more than the established rates were punishable under the Act even though they acted for their own gain and even though the railroad was not a party

to their conduct. In the case at bar, Pep demanded from the railroad, and the railroad paid to Pep, 10¼ cents per hundredweight for cartage service from Jersey City to the railroad's off-line station of Desbrosses Street, New York. The rail tariff filed showed that the rate on shipments of wood pulpboard from West Point, Virginia to Jersey City, New Jersey or Desbrosses Street, New York was 34½ cents per hundred-weight. Pep did not perform the service for which the railroad paid Pep 10¼ cents per hundredweight; thus limiting the railroad to a receipt of only 24¼ cents of its filed tariff rate of 34½ cents per hundredweight. By this means, the railroad was forced to transport the merchandise from Virginia to New York at a rate less than that which it had on file. This amounted to a proscribed rebate solicited and received from the railroad by Pep, and a violation of Section 1(1) of the Elkins Act, 49 U.S.C. § 41(1). It is "unlawful for anyone to receive any concession in respect of transportation of any property in interstate commerce by a common carrier whereby any advantage is given or any discrimination is practiced." United States v. P. Koenig Coal Co., 270 U.S. 512, 518, 46 S.Ct. 392, 394, 70 L.Ed. 709 (1926).

Pep's contention, that Section 222(c) of the Motor Carrier Act, 49 U.S.C. § 322(c), has displaced the provisions of the Elkins Act relating to rebates, concessions and discriminations, lacks support in the facts appearing on the face of the Information before us. As is well stated by Pep, the legislation embodied in Part I of the Interstate Commerce Act, adopted in 1887, regulated only interstate carriage by rail or jointly by rail and motor. The Elkins Act was adopted February 19, 1903 as a supplement to the then existing Interstate Commerce Act, and by its terms applied to acts done by any common carrier subject to the Interstate Commerce Act and its amendments. The amendment to the Elkins Act effected by the Hepburn Act did not work a change in the language delineating the coverage of the Elkins

Act. The Motor Carrier Act was adopted in 1935 and became Part II of the Interstate Commerce Act. It constitutes Chapter 8 of Title 49 of the United States Code. Section 202 of the Motor Carrier Act, 49 U.S.C. § 302, expressly provides, in pertinent part, as follows:

"§ 302—Application of provisions

(a) The provisions of this chapter apply to the transportation of * * * property by motor carriers engaged in interstate * * * commerce and to the procurement of and the provisions of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is vested in the Interstate Commerce Commission.

   *    *    *    *    *    *

(c) Notwithstanding any provision of this section or of section 303 of this title, the provisions of this chapter, * * * shall not apply—

(1) to transportation by motor vehicle by a carrier by railroad subject to chapter 1 of this title, * * * or by a freight forwarder subject to chapter 13 of this title, incidental to transportation or service subject to such chapters, in the performance within terminal areas of transfer, collection, or delivery services; but such transportation shall be considered to be and shall be regulated as transportation subject to chapter 1 of this title when performed by such carrier by railroad, * * * and as transportation or service subject to chapter 13 of this title when performed by such freight forwarder;

(2) to transportation by motor vehicle by any person (whether as agent or under a contractual arrangement) for a common carrier by railroad subject to chapter 1 of this title * * *; but such transportation shall be considered to be performed by such carrier, * * * as part of, and shall be regulated in the same manner as, the transportation by railroad, * * * to which such services are incidental."

Section 322 of Title 49 of the United States Code forms a part of Chapter 8 of that title. Section 302(c) of the same title expressly renders inapplicable the provisions of Chapter 8 transportation by motor vehicle for a common carrier by railroad subject to Chapter 1 of Title 49. Accordingly § 322 of the same title is inapplicable to Pep's transportation of the railroad shipment referred to in the counts of the Information. Since 49 U.S.C. § 41(1) is applicable to the railroad named in the Information, in whose behalf Pep transported the merchandise in question, Pep is subject to the proscriptions and penalties provided by the Elkins Act upon which the counts of the Information are properly based.

■ The test of the sufficiency of an indictment or information is whether the accusation contains elements of the offense intended to be charged, and sufficiently apprises defendant of what he must be prepared to meet, and whether the record shows accurately to what extent defendant may plead former acquittal or conviction in future proceedings relating to the same alleged offense. Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908); Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922); Vandersee v. United States, 321 F.2d 57 (3 Cir. 1963).

■ The Information in the present case meets the test of sufficiency recognized by the foregoing authorities.

The motion to dismiss the Information is denied. Let an order in conformity with the foregoing opinion be presented.