**Robert L. GONZALES and Mark Berg, Plaintiffs,**

v.

**WEST END IRON AND METAL CORPORATION; and International Longshoreman's Association, Local 1279, Defendants.**

Civil No. 5–94–33.

United States District Court,
D. Minnesota,
Fifth Division.

Feb. 23, 1996.

Thomas F. Andrew, Brown Andrew Hallenbeck Signorelli & Zallar, Duluth, MN, for plaintiffs.

Joseph James Mihalek, Fryberger Buchanan Smith & Frederick, Duluth, MN, for West End Iron & Metal Corp.

Kenneth David Butler, Clure Eaton Butler Michelson Ferguson & Person, Duluth, MN, for Local 1279 Intern. Longshoreman's Ass'n.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion to dismiss and for summary judgment. Specifically, defendants moved to dismiss Count II of plaintiffs' complaint under Fed.R.Civ.P. 12(b)(1). Defendants move for summary judgment on Count I. Based upon a review of the file, record and proceedings, and for the reasons stated, the court grants defendants' motions.

## BACKGROUND

West End Iron and Metal Corporation ("West End") is a Minnesota corporation with its principal place of business in Duluth, Minnesota. West End is in the business of processing scrap iron and other metals. Robert Gonzales ("Gonzales") and Mark Berg ("Berg") were employed as mechanics at West End until October 9, 1993. Gonzales and Berg (collectively "plaintiffs") are members of the International Longshoreman's

Association, Local 1279 ("Union") and subject to a Collective Bargaining Agreement ("CBA") between West End and the Union (collectively "defendants"). On October 8, 1993, plaintiffs were discharged for failing to return to work after lunch. After their discharge, Gonzales and Berg filed a grievance with the Union alleging that their discharge was unjust. The Union met with plaintiffs and West End and requested the reinstatement of plaintiffs. West End refused. After several months of negotiation the Union and West End reached a settlement. Plaintiffs were not involved in the settlement discussions.

On February 24, 1994, plaintiffs filed suit in state court alleging unjust discharge against West End and breach of the duty of fair representation against the Union. Gonzales and Berg also alleged that they were discharged for refusing to work near the smelter fumes in violation of their rights under the Minnesota Occupational Safety and Health Act ("MOSHA"). The Union timely removed this action to federal court as one arising under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, in which this court has original jurisdiction under 28 U.S.C. § 1331. Defendants now seek summary judgment on plaintiffs' labor law claims and seek dismissal of plaintiffs' MOSHA claim, or in the alternative, summary judgment.

## DISCUSSION

For the purpose of defendants' motion to dismiss, the court takes all facts alleged in the plaintiffs' complaint as true. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.* at 187; *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

The court applies these standards and analysis in the following discussion.

### A. Duty of Fair Representation

Plaintiffs allege the Union breached its obligation to fairly represent them in the grievance process by acting arbitrarily and in bad faith. The right to fair

representation by a union is a right which the judiciary has created by implication from federal statutes. *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The doctrine was devised to ensure that "no individual union member may suffer invidious, hostile treatment at the hands of the majority of his coworkers." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of America v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). To prevail on an unfair representation claim, a plaintiff has the burden of coming forward with evidence showing the union breached its "obligation to serve the interests of all [union] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). Because this is a tripartite standard, a plaintiff may allege a violation of any one or all of these elements. *See Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 77, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991); *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir.1992). Thus, a plaintiff demonstrates a breach of this duty by showing that the union acted arbitrarily, acted in a discriminatory manner, or acted in bad faith. Here, plaintiff alleges the Union acted arbitrarily and in bad faith.

### 1. Arbitrary Representation

 Plaintiffs attempt to state an independent claim for breach of the duty of fair representation by contending that the Union arbitrarily failed to investigate their grievance. A court can find a union's actions arbitrary for purposes of a breach of the duty of fair representation "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' ... as to be irrational." *O'Neill*, 499 U.S. at 67, 111 S.Ct. at 1130 (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). Thus, a breach of the duty of fair representation has been found where the union makes "no effort to communicate with the persons directly affected by its actions," *NLRB v. American Postal Workers Union*, 618 F.2d 1249, 1255 (8th Cir.1980), or where there is an "utter failure by the unions to make even a minimal attempt to investigate or process" a grievance. *Minnis v. Auto Workers*, 531 F.2d 850, 853 (8th Cir.1975).

Here the Union met repeatedly with both plaintiffs and defendants, kept plaintiffs informed of the grievance process, and were available to plaintiffs on numerous occasions to discuss their claims. Two days after losing their jobs, Berg and Gonzales met with Union President Leonard Leonzal ("Leonzal") and the President of West End, Steve Jackson ("Jackson"), to discuss the actions of West End. *See* Affidavit of Mark Berg, ¶ 12, Docket No. 24. The Union then forwarded plaintiffs' written grievance to Jackson at West End. Jackson wrote in response that West End considered the plaintiffs to have walked off the job which amounted to a voluntary quit under company policy. Affidavit of Steven Jackson, Exhibit B, Docket No. 18.

Despite the immediate refusal of West End to reconsider the termination of Gonzales and Berg, the Union continued to pursue the plaintiffs' grievance and kept them informed of any developments. Berg attended a grievance meeting with Union representatives. Both Berg and Gonzales were forwarded copies of correspondence between the Union and West End. Affidavit of Carmen Bates, Exhibits D and F, Docket No. 19. The Union Secretary/Treasurer Carmen Bates ("Bates") spoke to plaintiffs in several phone conversations and Union President Leonzal also spoke with plaintiffs by phone about their grievance. Affidavit of Carmen Bates, ¶ 18, Docket No. 19; Affidavit of Leonard Leonzal, ¶ 3, Docket No. 20. The Union twice requested that West End reinstate Berg and Gonzales. West End refused each request. Affidavit of Mark Berg, Exhibit C, Docket No. 24. The Union also filed a petition for mediation at the plaintiffs' request and met with the mediator to discuss the grievance. Affidavit of Carmen Bates, Exhibits K and L. Finally, the Union pursued discussions with West End until a settlement was reached in January 1994.

■ Based on an examination of this record, the court concludes that plaintiffs have failed to come forward with any evidence sufficient to raise an inference that the Union strayed from its duty to represent plaintiffs fairly or handled their grievance in a perfunctory manner. Mere allegations of arbitrariness or of a failure to investigate are insufficient to survive a motion for summary judgment. As a result, plaintiffs' claim of arbitrary handling of their grievance by the Union fails.

### 2. Bad Faith

■ Plaintiffs also contend that the Union breached its duty of fair representation by implying bad faith on the part of the Union. Plaintiffs attempt to show bad faith by alleging that the Union wrongfully failed to notify them of the settlement meeting with West End, settled the grievance without plaintiffs' approval and failed to seek arbitration of the dispute. Plaintiffs also allege that the Union too readily accepted the defendants' version of the facts.

■ The Labor Management Relations Act provides that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes." 29 U.S.C. § 173(d). Moreover, "any substantive examination of a union's performance ... must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill,* 499 U.S. at 78, 111 S.Ct. at 1135.

■ The only parties to the CBA were West End and the Union. The agreement provides that the Union and West End have exclusive authority to settle discharge disputes. *See* CBA attaches as Exhibit 1, Article II, B and C, Docket No. 12.[1] The fact that Berg and Gonzales were not notified of the settlement meeting, nor approved of the settlement, does not impact the validity of the settlement. "[A] decision by the union and [the employer] about how to handle a grievance is final and binding even if the aggrieved employee disagrees." *Linton v. United Parcel Service,* 15 F.3d 1365, 1370 (6th Cir.1994). No inference of bad faith rises from the Union's settlement of plaintiffs' claims.

■ Plaintiffs also rely on the Union's failure to arbitrate the grievance. Plaintiffs requested mediation and the Union agreed to seek mediation with the Minnesota Bureau of Mediation Services. Plaintiffs apparently confused mediation with arbitration and upon discovering their misunderstanding then requested arbitration. The CBA, however, provided that arbitration is available to the parties only "[if] the representatives of the Union and the Employer are unable to arrive at a satisfactory settlement of the dispute." CBA, Exhibit 2, Article II, B. Thus, arbitration was available only when mutual agreement between West End and the Union and was not forthcoming; here they settled the dispute.

■ The undisputed facts demonstrate that the Union made reasonable and fair attempts to meet with plaintiffs and West End to investigate the grievance. Plaintiffs have come forward with no evidence to support an inference that the Union acted arbitrarily, failed to investigate their claim, readily accepted facts as asserted by West End, or acted in bad faith in any way. Having failed to carry their burden, summary judgment against plaintiffs is appropriate on their claim that the Union breached its duty of fair representation.

### B. Termination of Employment

■ In Count I of the complaint, plaintiffs appear to allege a state law claim of wrongful discharge in violation of the CBA. Both parties have discussed the issue of just cause and termination of employment in their memoranda.

---

1. The CBA provides that "If the representatives of the Union and the Employer are unable to arrive at a satisfactory settlement of the dispute, then the matter shall be refereed to the Arbitration Board as set forth in this Agreement." CBA, Article II, B. Further, the agreement states that "any controversy ... that cannot be settled between the representatives of the Union and the Employer shall be settled by a Board of Arbitration." CBA, Article II, C.

Under the well established doctrine of federal preemption, any claim requiring the interpretation of a collective bargaining agreement is preempted by § 301 of the Labor Management Relations Act of 1947. 61 Stat. 156, 29 U.S.C. § 185(a); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Thus, even if the court liberally construed plaintiffs' complaint to state a claim for wrongful discharge under state law, it would be preempted under the theory of § 301 preemption. Such preemption ensures that "interpretation of collective-bargaining agreements remains firmly in the arbitral realm." *Lingle v. Norge Div. Of Magic Chef., Inc.*, 486 U.S. 399, 411, 108 S.Ct. 1877, 1884, 100 L.Ed.2d 410 (1988). "[J]udges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." *Id.; Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269 (8th Cir.1994). State law claims are independent, and thus cognizable in federal court, only if the claim can be resolved without interpretation of the CBA. *Hawaiian Airlines, Inc. v. Norris*, — U.S. —, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Here, plaintiffs' claim that West End breached the CBA clearly requires the determination of the just cause standard under the CBA. As such, plaintiffs claim is barred.

Defendants' motion for summary judgment with respect to this claim is therefore granted.

## C. MOSHA Claim

In Count II of their complaint, plaintiffs claim that they were discharged by West End in violation of MOSHA for refusing to work near smelter fumes. In contrast to the above discussed claim, this claim is not subject to § 301 preemption because it does not require interpretation of the collective bargaining agreement and thus is an independent claim that may be resolved by the court. *See Lingle*, 486 U.S. at 406–08, 108 S.Ct. at 1881–83; *Brevik v. Kite Painting, Inc.*, 416 N.W.2d 714 (Minn.1987).

Defendants have moved to dismiss Plaintiffs' MOSHA claim for lack of subject matter jurisdiction or, in the alternative, for summary judgement. Defendants assert that the plaintiffs have failed to exhaust their administrative remedies which deprives this court of subject matter jurisdiction and requires dismissal.

Courts have "long acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, and n. 9, 58 S.Ct. 459, 463–64, and n. 9, 82 L.Ed. 638 (1938)). Where the legislature has established a statutory review procedure a plaintiff may not bring a complaint to federal court until the administrative remedies have been exhausted. *See Ellingson & Associates, Inc. v. Keefe*, 410 N.W.2d 857 (Minn.App.1987). A court is without subject matter jurisdiction over a claim where an administrative agency is provided exclusive authority and administrative review is statutorily defined. *Ellingson*, 410 N.W.2d at 860–61.

Neither MOSHA nor Minnesota caselaw, however, invests an administrative agency with the exclusive authority to remedy alleged acts of discrimination. Plaintiffs who have engaged in conduct protected under MOSHA are not required to exhaust any administrative remedies before filing suit in district court. Thus, defendants' motion to dismiss for lack of subject matter jurisdiction is without merit. The court's inquiry is whether plaintiffs engaged in statutorily protected conduct.

Under MOSHA, an employee is protected against discharge or discriminatory treatment by an employer if the employee exercises any of the rights recognized in the statute. MOSHA provides that:

No employee shall be discharged or in any way discriminated against because such employee has filed any complaint or instituted or caused to be instituted any proceeding or inspection under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf

of the employee or others of any right afforded by this chapter.

Minn.Stat. § 182.654, subd. 9 (1993). MOSHA also provides that "an employee acting in good faith has the right to refuse to work under conditions which the employee reasonably believes present an imminent danger of death or serious physical harm to the employee." Minn.Stat. § 182.654, subd. 11 (1993). The Act further states that "an employer may not discriminate against an employee for a good faith refusal to perform assigned tasks if the employee has requested that the employer correct the hazardous conditions but the conditions remain uncorrected." *Id.*

Plaintiffs allege that fumes from the nearby smelter caused them to become ill on October 8, 1993, and unable to return to work after their lunch break. Plaintiffs assert that they reported the smelter smoke to West End on numerous occasions prior to October 8, 1993. Affidavit of Mark Berg, ¶ 2, Docket No. 24. West End admits that plaintiffs were exposed to smelter fumes while employed by West End. *See* Defendants' Reply Memorandum to Plaintiffs' Memorandum in Opposition to Summary Judgment, ¶ 10, Docket No. 25. Plaintiffs, however, never commenced any proceeding against West End under MOSHA nor did they file a complaint with the commissioner. Plaintiffs did not mention the smoke to West End on the morning of October 8, 1993, prior to their lunch break.

The only potential violation of MOSHA is plaintiffs' assertion that they notified West End of the smoke on previous occasions and that they believed in good faith that the fumes presented an imminent danger of death or serious physical harm. To prevail on a claim of discrimination in violation of Minn.Stat. § 182.654, subd. 11, plaintiffs must show:

(1) a good faith belief that the working conditions posed a threat of "imminent danger of death or serious physical harm;" and

(2) the communication of that concern to the employer prior to the employee's re-

fusal to work due to the working conditions.

Minn.Stat. § 182.654, subd. 11 (1993).

Plaintiffs' proof on both prongs is deficient. Plaintiffs' failure to seek medical assistance or otherwise report their concerns to others belies their claims of good faith. However, giving plaintiffs every reasonable inference, the court assumes plaintiffs can demonstrate good faith. Moreover, the court assumes, without deciding, that the smelter fumes were such a hazardous condition as would give rise to the right to refuse to work under the conditions. Although plaintiffs allege that they notified West End on "numerous occasions," the court finds that the mere allegation of such notice is insufficient to create a fact issue on the point. Plaintiffs cite no specific dates or occasions prior to or on the morning of October 8, 1993, on which they notified West End of their concerns. Because plaintiffs have failed to allege facts sufficient to support a claim for wrongful discharge in violation of MOSHA, summary judgment in favor of defendants and against plaintiffs is warranted.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment on plaintiffs' duty of fair representation claim is granted;

2. Defendants' motion for summary judgment on plaintiffs' wrongful termination claim is granted; and

3. Defendants' alternative motion for summary judgment on plaintiffs' MOSHA claim is granted;

**LET JUDGMENT BE ENTERED ACCORDINGLY.**